HARRIET W. FOSTER *vs.* SAMUEL R. PRENTISS.

JOAB W. PALMER *vs.* same.

Penobscot. Opinion June 5, 1883.

*Mortgage. Fixtures. Waiver.*

A mortgagor claimed to own certain machinery and tools in a mill, or that had been in the mill and were removed by him, as not being embraced in the mortgage of the land " with the steam-mill, fixtures, machinery, buildings," and at the request of the mortgagee, after he had taken possession, repaid to the mortgagee the amount paid by him as taxes on such machinery and tools. *Held,* That such repayment to the mortgagee, who had knowledge of the facts and situation of the property, constituted a valuable consideration

for his assenting to the mortgagor's claim to title, and the payment and retention of the money by the mortgagee constituted a waiver of his claim to such property under the terms of the mortgage, or as fixtures to the realty.

ON REPORT.

These were actions of trover to recover the value of certain machinery and tools; the plaintiff in the first suit received her title to the property named in her writ from the plaintiff in the second suit and it consisted of the machinery in the planing mill. The writs were dated July 12, 1880. The plea in each case was general issue. The cases were tried together.

The opinion states the material facts.

*Wilson and Woodward*, for the plaintiffs, cited: *Pickard* v. *Sears*, 6 Ad. and El. 469; *Welland Canal Co.* v. *Hathaway*, 8 Wend. 483; *Lapham* v. *Norton*, 71 Maine, 88.

*Charles P. Stetson*, for the defendant, contended that the bank never intended to and never did waive or release any rights which it had and that a director, trustee or treasurer cannot by virtue of his office release parties from liability to the corporation under contract. *Dedham Savings Inst.* v. *Slack*, 6 Cush. 408; *E. C. Co.* v. *M. Ins. Co.* 6 Gray, 220; *Fairfield Savings Bank* v. *Chase*, 72 Maine, 227.

SYMONDS, J. Trover for machinery, tools and other articles, claimed by the plaintiffs as their personal property, by the defendant as parts of real estate purchased by him.

The land, "with the steam-mill fixtures, machinery, buildings," was conveyed to the Bangor Savings Bank by the firm of Palmer and Johnson, October 8, 1869, by a deed of warranty intended only as a mortgage. That firm on April 1, 1873, transferred its business to the new firm of Palmer, Johnson and Company which continued in the occupation of the premises from that time till the bank took possession under its deed in November, 1877. The plaintiffs represent whatever title either of these firms had in the property in dispute. The defendant represents the bank, whose title he acquired by a deed dated November 1, 1879. In his testimony he does not claim to stand in any better position than that. "The bank sold me just what their mortgage covered."

The deed of confirmation dated Junuary 28, 1880, from the bank to him declares it to have been the intention of the parties to the deed of November 1, 1879, " to convey all the said bank's right, title and interest in and to all the machinery, fixtures and all other parts and things to said mill belonging . . . intending hereby to place the said Prentiss in the place of said bank with reference to all said property, with the same rights of enjoyment and action which the bank then had, such being the intention of the parties at the time of making said deed." No question, therefore, arises as to any superior rights a purchaser from the bank for valuable consideration, without notice of the plaintiffs' claim to hold a part of the property as personalty, might have. The rights of the bank as mortgagee, whatever they were, were transferred to the defendant. The interests of the mortgagors and the firm which succeeded them in the business are in the plaintiffs. The case is to be decided as if the original parties were before the court.

In November, 1877, soon after the bank took possession, the plaintiff, Palmer, removed from the steam-mill to his house certain parts of the machinery and tools, claiming them as his own. This removal was known to the officers of the bank either before, or very soon after it took place. It was also known to the bank that Palmer claimed the machinery in the planing mill, which was left upon the mortgaged premises, as his, and with one of the trustees at least, he stipulated that he should lose no rights by allowing it to remain where it was.

The treasurer of the bank, subsequently in conversation with Palmer, claimed that if the planing mill machinery and the property which had been removed from the steam saw mill to Palmer's house were not included in the mortgage to the bank, but were Palmer's property, he ought to repay to the bank the amount which it had expended to discharge the taxes upon them for the years 1876 and 1877. To this claim Palmer assented and in pursuance thereof on December 17, 1877, paid to the bank the sum of one hundred and eighteen dollars, taking the following receipt signed in the name of the bank by its treasurer : " Received of Palmer, Johnson & Co. one hundred and eighteen

dollars, for taxes in Brewer for the years 1876 and 1877, on property removed by them from the saw mill known as the Palmer mill and the machinery in the planing mill."

The treasurer testifies : " After the payment of this one hundred and eighteen dollars, I told the trustees what I had received and the books showed it ; I can't say they all knew it but the books were submitted to their examination, most every day more or less of them were in and looked over the books. I think I spoke to the president in regard to the receipt of this money ; I think I told him that I had succeeded in collecting so much money on account of taxes paid on the Brewer property, from Palmer and Johnson."

About two years later the bank conveyed the real estate to the defendant, and the question is whether that deed gave him title to the property on which the taxes had been so paid by Palmer. We think not.

The effect of the deed has already been considered. · It was simply to put the defendant in the position of the bank. But the bank had already waived its claim upon the property mentioned in the receipt. It had received and retained a valuable consideration for assenting to Palmer's claim of title to it as personal property. This was the only reason for Palmer's making the payment and the only ground on which the treasurer received it. The money was not demanded nor paid on account of the mortgage debt, nor as an assessment due from the mortgagors in possession, but solely upon the ground that, if the property was Palmer's, he ought to pay the taxes upon it. Assent to his title, waiver or release of the claim of the bank, were in substance the inducements held out to Palmer to make the payment. He had already removed the steam-mill machinery to his house, claiming it as his, and this fact was known to the bank. The receipt is in terms for taxes upon property so removed and upon the machinery in the planing mill, manifestly recognizing the facts of the situation, precisely what it was on which it belonged to Palmer to pay the taxes, that these two lots of property stood alike in this respect and differently from the mortgaged property, Palmer's claim of title extending to both.

The demand by the treasurer was in effect that Palmer should reimburse to the bank the amount which it had paid for taxes upon his machinery. It could not have been the understanding of either party that the bank should receive the taxes from Palmer, as assessed upon his property, and then hold the property as its own.

It is not necessary to consider the prior authority of the treasurer or other officer of the bank to act for it in these respects, because the case shows sufficient evidence that these acts of its agents were ratified by the corporation. The conclusion from the testimony cannot be avoided that this transaction was known to the trustees at the time. Palmer's claim of title, his assertion of it by removing part of the property from the mill to his house, and by effecting an arrangement with some of the corporate officers, by which he could leave the rest at the mill without losing any rights, his payment of the one hundred and eighteen dollars, and the treasurer's receipt of it, as an amount due for taxes upon property which Palmer owned, these facts being known, the acceptance and retention of the money became corporate acts, acts of the bank. It still holds the one hundred and eighteen dollars, while its grantee (having only its rights) claims the property as part of the realty. To allow this claim would be to disregard the agreement clearly implied in the acts of the parties. The deed did not convey to the defendant property which the bank had already received a valuable consideration for allowing Palmer to consider his.

There are other parts of the evidence which strengthen this conclusion that the bank released its claim upon the property mentioned in the receipt, such as that during the two years while the bank was in possession, before the deed to the defendant, it made no effort to recover the property which Palmer had carried away, and also that during the same time it allowed him to let the planing mill machinery to one Goodwin for a while, and receive the rent therefor.

Of the articles mentioned in the schedules annexed to the writs, it is only to these two classes, the planing mill machinery, and the property removed from the steam saw mill, that the

defendant claims title.    Some parts of the machinery of the old mill which the mortgage did not cover, and a few other articles which are not claimed as part of the realty, are alleged to have been converted by the defendant.    These, so far as they shall be proved, will be included in the assessment of damages; together with the planing mill machinery, and the steam-mill property, which the defendant took from Palmer's house, after it had been removed there.    In both actions the entry will be,

> *Defendant defaulted.    Assessment of damages at nisi prius.*

APPLETON, C. J., WALTON, DANFORTH and VIRGIN, JJ., concurred.

PETERS, J., did not sit.