Huston, Appellant, to use Perot, Assignee, v. Clark et al.

162 435
162 441
162 435
173 363

*Contract—Reorganization of corporation—Debts—Fixtures.*

The property of a corporation covered by a mortgage was sold under foreclosure proceedings. The purchasers organized a new company and took possession of all of the assets of the old company, agreeing to pay a certain amount for the personal property, and to account for the book debts which they should collect. There was no agreement to guarantee the collection of these debts. *Held*, that the new company was not liable for any deficiency in the book accounts which they were unable to collect.

In the above case, after the appraisement of the personal property had been made, it appeared that certain tools included in it were really fixtures, covered by the mortgage. *Held* that the new company was entitled to have the value of such tools deducted from the appraisement of the personal property which they had agreed to pay.

Argued March 20, 1894. Appeals, Nos. 163 and 200, Jan. T., 1894, by plaintiff, Samuel Huston to use of Charles P. Perot, assignee for benefit of his creditors, and by defendants E. W. Clark, William Sellers and John Sellers, Jr., from decree of C. P. No. 1, Philadelphia Co., March Term, 1882, No. 373, on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, DEAN and FELL, JJ. Affirmed.

Bill in equity for an account.

In 1890 a decree was entered in the court below, dismissing the bill. On appeal to the Supreme Court the decree was reversed, and the record remitted for the purpose of having an account stated between the parties. The case is reported as Huston's Appeal, in 127 Pa. 620, where the material facts, and the agreement between the parties appear. The case was referred to Boies Penrose, Esq., as master, to state an account.

Both plaintiff and defendant filed exceptions to the master's report. The court sustained certain of the defendant's exceptions, in the following opinion by BIDDLE, J.:

" There are only three matters in the very able and elaborate report of the master in this case in respect to which we are disposed to differ from him: (1) the alleged excess of assets over liabilities of December 31, 1880, amounting to $46,468.56 ; (2) the alleged balance due by Clark and Sellers, $22,595.52 ;

and (3) value of tools alleged not to have been accounted for, $60,119.05.

" As to the first the master says : ' The next item in dispute is No. 9, excess of assets over liabilities, $46,468.56. This claim is allowed, inasmuch as plaintiff and defendants agree as to the amount on December 31, 1880, while the losses claimed by the defendants subsequent to December 31, 1880, cannot be allowed, for none of the credits claimed by the defendants to reduce this sum were properly chargeable against matters arising prior to December 31, 1880. The Supreme Court decided that the accounting should be as of December 31, 1880. The plaintiff received none of the profits since that date, and should not be charged with any of the losses.'

" Undoubtedly the new company was bound to pay the appraised amount at which they took the personal property and tools, but there was no obligation upon it, or upon Sellers and Clark, to account for more than was realized from the two items, ' book account ' and ' bridge contract.' They were assets to be liquidated, and if they did not realize their face value why should the defendants be charged with the deficiency? There was no evidence that they ever agreed to guarantee the amount ; the only obligation they were under was to liquidate these assets to the best advantage. That in doing this the loss occurred subsequent to December 31, 1880, does not invalidate their right to have the advantage of it. The learned master seems to base his refusal to recognize the loss incurred in the liquidation, because the accounting was to be of December 31, 1880. But as the loss which had occurred did not arise from any transaction subsequent to that date, it seems to us it should have been considered and allowed. The deficiency in the item of bridge contract appears to have amounted to $35,305.70, which should be deducted from the surcharge. So also the loss on the book accounts, $5,019.58. So that the defendants would appear to have been surcharged with $40,325.28 for assets which they could not realize.

" 2. As to the alleged balance due by Clark and Sellers, it is claimed by the defendants that as by the decision of the Supreme Court they were justified in appropriating to themselves, in partial payment of their indebtedness, bonds of the Midvale Steel Works to upwards of $300,000, which bore a rate of in-

terest of seven per cent, it was inequitable in this account to credit them only with six. They also complain that no interest can be allowed to the company as against the defendants upon cash payments made by it, except as to such extent as such payment was not required to liquidate interest due, when it was made. We think both of these points well taken.

|  |  |
|---|---:|
| The excess of interest, therefore, to which Sellers would be entitled, would be, at one per cent, . | $9,597 75 |
| And the excess due Clark, . . . . | 9,550 78 |
|  | $19,148 53 |
| The difference between the six and seven per cent interest. This they were not allowed. | |
| The excessive interest charged by not charging partial payments to interest due would be, . | 6,622 73 |
| The two items amounting to . . . | $25,771 26 |

These amounts should be credited to them.

" 3. As to the value of so-called tools alleged not to be accounted for. The mortgage under which this property was sold was a mortgage upon a factory in full operation, and, as the master has found, expressly covered real estate, steam engine, boilers, machinery, appurtenances, and all its franchises. That all things used in the factory which are part of the machinery necessary in the process of manufacture are fixtures, and covered by a mortgage of this character, and transferred to a purchaser by a sale under it, cannot be doubted. The question whether an article claimed under the sale is a fixture is not to be determined by the mode of bookkeeping of the person who is sold out, but by expert testimony. In the present case, after the purchase of everything covered by the mortgage, the defendants purchased the tools, which were appraised and valued at $80,000. Subsequent examination, it is alleged, however, made it appear that of this $80,000, $60,119.05 were not ' tools,' but really ' fixtures.' Of course, if that were so, the defendants would really have paid twice for the same thing. They therefore transferred to themselves that amount as having come to them under the sale.

" The learned master, while he does not controvert the correctness of this proposition, surcharges the defendants with the

full amount, on this ground : 'Of what this $60,119.05 consisted did not appear in the evidence. The defendants' witness produced a list of articles, being tools, which he stated might or might not have formed this $60,119.05 ; but he was unable to prove that the articles mentioned in that list were the articles appropriated by defendants, and, in fact, stated it was only a theory or mere supposition on his part, and that he could ascertain nothing in reference thereto at the works.'

"It seems to us that this conclusion could not have been arrived at without entirely ignoring the testimony of Mr. William Sellers, a most competent expert. He was subjected to an examination of great length, in which he elaborately stated what was contained in the machinery account, and why they were all properly applicable to that account to an amount exceeding $60,119.05. As there appears to have been no contradiction of his statement, we think it cannot be said that it does not appear of what the items consisted, or that they were not appropriated by defendants. The master may well have overlooked this testimony in the great mass of matter presented to him ; but a careful reading of it, we think, shows conclusively that it covers all the objections made by him to its allowance as a credit.

"We think, therefore, that the defendants should not have been surcharged, either with the unrealized assets, amounting to $40,325.28, or with the 'tools,' amounting to $60,119.05, and that the sum of $25,771.26 should be deducted from any balance alleged to be due by them."

The exceptions on those three points were sustained, the others dismissed and the costs placed on defendants. The following statement was made part of the decree :

### Dr.

| | | |
|---|---|---:|
| Balance interest due on payment of personal property | | $1,073 09 |
| "     due L. Burke | | 600 00 |
| Excess assets over liabilities . . . $46,468 56 | | |
| Less amount stricken out by the court      40,325 28 | | |
| | | 6,143 38 |
| E. W. Clark, balance due on loan account . | | 11,637 25 |
| W. and J. Sellers, " " " " " . . | | 10,958 24 |
| | | $30,411 86 |

CR.

Additional interest ordered by the court to be cred-
     ited to this account    .    .    .    .    .    $25,771 26
         Balance due guarantee fund    .    .     .    4,640 60

Of which Samuel Huston is entitled to
     one third, or,    .    .    .    .    $1,546 87
With interest from January 1, 1881, to
     December 4, 1893    .    .    .    .    1,199 80

                            $2,746 67

*Errors assigned* by both plaintiff and defendants were as to
the disposition of the exceptions, including costs, quoting them.

*A. T. Freedley*, for Samuel Huston, cited, on the question of
fixtures: Holly Mfg. Co. v. New Chester Co., 3 U. S. C. of
App. 283; Morris's Ap., 88 Pa. 368; Vail v. Weaver, 132 Pa.
363; on question of costs: Stocker v. Hutter, 134 Pa. 27; Coll-
yer v. Collyer, 38 Pa. 257; Dampf's Ap., 106 Pa. 80.

*John G. Johnson, George L. Crawford* with him, for appellee,
cited, on question of fixtures: Conklin v. Meyer, 1 C. P. R.
3; Lorrkin v. Dyer, 1 Del. 388; Live Stock Co. v. Coal Co.,
2 C. P. R. 117; Morris's Ap., 88 Pa. 383; Harmony Building
Association v. Berger, 99 Pa. 324; Williams's Ap., 1 Mona.
274; Vail v. Weaver, 132 Pa. 363; on question of interest:
R. R. v. Adams, 54 Pa. 94; Stokely v. Thompson, 34 Pa. 210;
Bura v. Thompson, 2 Clark, 143.

HUSTON, APPELLANT, TO USE, v. CLARK ET AL.

PER CURIAM, July 11, 1894:

This case was before us in 1890 on plaintiff's appeal from
decree of the court below dismissing his bill: 127 Pa. 620.
In an elaborate opinion by our brother MITCHELL, fully con-
sidering and disposing of the numerous questions then pre-
sented, etc., it was held that appellant was entitled to an
account, and the decree was accordingly reversed and the rec-
ord remitted with instructions that said account be stated upon
the principles clearly and concisely set forth in the conclusion

of said opinion. Shortly afterwards the case was referred to the learned master who stated an account and reported the same to the court in May, 1893, with form of decree in favor of plaintiff for $75,896.60. To that report numerous exceptions were filed by the defendants, fifteen of which were sustained by the court and a decree entered in favor of the plaintiff for $2,746.67, from which the present appeal was taken.

The questions presented by the specifications of error were pressed upon our attention with great ability by the learned counsel for plaintiff; but, after fully considering the record, with special reference to said questions, we are not convinced that there is any error in the decree that requires either reversal or modification thereof. The learned judge of the common pleas evidently considered the questions involved with great care; and, in recasting the account, in accordance with his own conclusions, he appears to have adhered as closely as possible to the principles upon which we said the account should be stated. The subject-matters of difference between him and the learned master relate mainly to the following general items of account: (1) The alleged excess of assets over liabilities, as of December 31, 1880, amounting to $46,468.56; (2) the alleged balance due by the defendants, Clark and Sellers, $22,595.52; and (3) value of tools alleged not to have been accounted for, $60,119.05. Each of these is of course composed of numerous minor items, some of which involved considerable labor in the examination of statements of account, exhibits, etc. As the result of a careful examination of these three general items, the learned judge has clearly and distinctly pointed out grave errors in each of them. It is not our purpose, nor do we deem it necessary to consider them in detail. To do so, would require more time than we can possibly command, and involve an amount of purely clerical labor which in the end would be practically useless.

All that is necessary to be said in relation to either of them will be found in the clear and concise opinion of the learned judge who presided at the hearing, and passed upon the exceptions to the master's report. On that opinion we think the decree should be affirmed.

Decree affirmed and appeal dismissed with costs to be paid by appellant.

HUSTON, TO USE *v.* CLARK ET AL., APPELLANTS.

PER CURIAM, July 11, 1894:

Both parties having appealed, the two cases were argued together. From an examination of the record, in connection with the specifications of error in each case, we are satisfied that neither of the appeals should be sustained. The decree is substantially correct, and in the plaintiff's appeal, No. 163, January Term, 1894, it has been affirmed on the opinion of the court below. That practically disposes of this appeal; and it is accordingly dismissed with costs to be paid by appellants.