WILLIAM COOK as *Sheriff* v. C. M. CONDON *et al.*
### No. 232.

1. PARTIES—*sheriff attempting to levy tax warrant is proper*, *to injunction*.    In a proceeding to enjoin a sheriff from selling property by virtue of a tax warrant, where the only question is the character or ownership of the specific property, the sheriff is the actual and real party defendant, and not the municipalities to which the tax is due, the latter not having applied to the trial court to be made parties defendant.

2. ——— *defect of, must be taken advantage of in pleadings.* A defect of parties must be raised by pleading; and, when not so taken advantage of, will not be considered by this court on error.

3. FIXTURES—*articles of machinery in flouring mill are.*    The terms "mills" and "flouring mill" include the machinery necessary for the operation of the same as well as the buildings; and where such is a mortgagee's security for a large indebtedness, it will be presumed, the contrary not appearing, that the removal of the machinery, thereby rendering the property valueless for its purpose, will impair the security.    All things used in a mill, which are a part of a complete system and of the machinery necessary to its operation and which have been placed therein by the

COOK v. CONDON.                    575

Dec. 22, 1897.        Opinion.  Schoonover, J.            E. Div.

owner of the realty with intent to make the same permanent, are fixtures and covered by a mortgage upon such mill.

4. PRINCIPLES OF REVIEW — *questions for review must be presented to trial court.* Questions not presented to the trial court cannot, for the first time, be considered by this court.

Error from Labette District Court. Hon. J. D. McCue, Judge. Opinion filed December 22, 1897. *Affirmed.*

*F. H. Atchinson*, for plaintiff in error.

*Nelson Case*, for defendants in error.

SCHOONOVER, J. This is a controversy about the machinery part of certain flouring mills situate in the city of Oswego, Labette County. The cause was submitted to the trial court upon an agreed statement of facts, upon which the court found conclusions of law and entered a decree perpetually enjoining plaintiff in error from selling or interfering with the property. Plaintiff in error filed a motion for a new trial on the following grounds : *First,* because the decision is not sustained by sufficient evidence and is contrary to law ; *second,* because of error in the assessment in the amount of recovery ; *third,* because of error of law occurring at the trial and excepted to by the defendant.

The motion was overruled, and exceptions saved. Proceedings in error were brought by defendant below.

The following are the agreed facts :

" On the trial of this case the following shall be taken as all the facts bearing upon the issues herein, which facts are hereby agreed to for the purpose of this trial, and none other.

" 1. That the Mercantile Bank of New York City and the Fourth National Bank of St. Louis, plaintiffs, are corporations duly organized under the United States National Banking Law, and the Oswego Roller

576      Cook v. Condon.

S. Dept.      Opinion. Schoonover, J.      6 Kan. App.

Mills Company is a corporation duly organized under the laws of the State of Kansas, and each has been such corporation for more than three years last past; that defendant is, and for more than a year last past has been, the duly elected, qualified and acting Sheriff of Labette County, Kansas.

"2. That at and prior to the commencement of this case, the Oswego Roller Mills Company was indebted to plaintiffs as follows: To C. M. Condon in the sum of ten thousand dollars, with ten per cent. per annum interest from July 17, 1891; to the Mercantile National Bank of New York City in the sum of twenty thousand dollars, with six per cent. per annum interest thereon from March 25, 1891; to the Fourth National Bank of St. Louis in the sum of five thousand dollars, with ten per cent. per annum interest thereon from October 12, 1891.

"3. That at and prior to the commencement of this case, the Oswego Roller Mills Company was the owner of block 6 and lots 1, 2, 3, 4 and 5 in block 1, in Spruill's Addition to Oswego, in Labette County, Kansas, on which, for a number of years past, there has been and now is situated a large brick building, constructed and used as and for a flouring mill, known as the Oswego Roller Mills, as also grain elevators, office and other buildings."

[There is no contention as to the property contained in the fourth statement of fact.]

"5. That before the contraction of the indebtedness described in paragraph two, and before the giving of the mortgage mentioned in paragraph seven, of this agreed statement, all of the following-described articles, to wit: Two Todd & Stanley patent double rolls; three Stevens double rolls; one Rickerson double roll; one Gray bran roll; two Stevens single rolls; one Fairbanks bag and barrel scales; one Fairbanks large warehouse scales; one Todd & Stanley Victor rye burr; two two-wheel trucks; one Richmond cleaner, number 0; one aspirator, number 1; one A. Schwarzwaelder's American wheat scourer; one rye bolting chest and cloth, had been purchased by the Oswego

Roller Mills Company and by it placed in the above-described brick flouring mill to be used in the operation of said mill, where they have ever since been kept and used, and where they were situated at the time of the commencement of this suit. That all of said articles were purchased for and were adapted to the operation of a flouring mill, and they were all necessary for the operation of the above-described mill to its running capacity, and they had all been used for such purpose since the time they were put in said mill as aforesaid.

"6. The Todd & Stanley double rolls are patent machines about four feet by five feet in size and about five feet high, and are supported by a heavy cast iron frame, which is a part of the machine and terminates at the lower part of the machine in four legs, which rest upon and are fastened to two wooden sills. These are about six feet long, two inches thick and eight inches wide. Each machine weighs about three thousand pounds, and is held in place partly by its own weight and partly by belting, which connects with the motive power directly beneath the machines. They are not otherwise annexed or affixed to the building.

"The three Stevens double rolls are very similar to the Todd & Stanley rolls in outward appearance, size and weight; one of them is not fastened to the building at all; each of the other two has three lag screws passing through the sills and into the floor, so that if the machine was removed there could be but three holes left in the floor about three-eighths of an inch across and two and one-half to three inches deep.

"The two Stevens single rolls and the Rickerson roll are of the same general character and shape as the double rolls, but are somewhat smaller. One of the Stevens single rolls and the Rickerson roll are not fastened to the building at all, but, like the rolls first mentioned, are held in place partly by their weight and partly by belting.

"The other Stevens single roll does not have

wooden sills under its legs and is fastened to the floor by a lag screw at each leg to hold it in place.

"The rye burr and Gray bran roll are also patent machines, somewhat larger and heavier than the double roll machines. They are each supported by a heavy cast-iron frame which is a part of the machine and has a flange at the bottom. The bran roll has six and the rye burr four three-eighths-inch lag screws passing through this flange and into the floor to hold the machine in place, and are not otherwise fastened to the building. All the above machines are on the first floor.

"The Richmond cleaner is a patent machine about six by six by six feet in size. It is supported by wooden legs which are a part of the machine. The machine is not fastened to the floor or building in any manner, but there are several pieces of scantling fitted to and extending from the top of the machine in different directions to the timbers and joists of the next floor, to which they are fitted and attached, to steady the machine.

"The aspirator is a patent machine about two and one-half feet wide by four feet long, and is about seven feet high. It rests on four wooden legs, each about one and one-half inches by four inches. There are two cleats to prevent the legs slipping on the floor, and three braces at the top of the machine extending in different directions to the joists above, to which they are fitted and attached, to steady the machine. It is not otherwise fastened to the building. The cleaner and aspirator are on the second floor.

"The Schwarz grain scourer is also a patent machine, somewhat larger than the double roll and like them supported by four iron legs, which are a part of the machine and fastened to two wooden sills. One common iron bolt and one lag screw pass through each sill of the machine. The common bolts pass through the floor but are not fastened below. The lag screws are three-eighths inch and screw into the floor and joists.

."The rye bolt is a patent machine about four feet

COOK v. CONDON. 579

Dec. 22, 1897.　　　Opinion.　Schoonover, J.　　　E. Div.

wide, six feet high and ten feet long. It is not fastened to the building at all.

"There are spouts and elevator buckets properly fitted to all of the above-described machines, extending from the machine on which they rest or to which they are attached to the floors both above and below, for the purpose of conducting the grain and its product to the proper place in the building; each is also properly connected with the motive power in the mill by proper belts and pulleys, thus making the above-described machinery with the other machinery in the mill one complete system.

"The above machines are manufactured in large numbers by different companies and put upon the market for sale indiscriminately, and were none of them manufactured expressly for this mill. Other machines of the same make could be readily bought in the market and would work equally well in the place occupied by the machines levied upon and above described.

"Unless because too heavy, the above-described machines could be removed without taking them apart and without injury to them or to the building, and when so removed could be set up and operated equally well in some other flour mill.

"The trucks and one of the scales levied upon are in no manner fastened to the building, nor do they differ from other trucks and platform scales. They could be equally well used anywhere and in any business in which it is necessary to handle and weigh heavy objects.

"The other pair of scales are ordinary platform scales, but let down into the floor in a hole cut therein, so that the top of the platform of the scales is level with the floor.

"7. That for the purpose of securing the indebtedness mentioned in paragraph two of this agreed statement, the Oswego Roller Mills Company executed, acknowledged and delivered its real-estate mortgage, which was on September 11, 1891, duly recorded in book 35 of mortgages at page 604, in the office of the register of deeds of Labette County, Kansas, on its

property situated in Labette County, Kansas, and described as shown by said record as follows, to wit: 'Block 6, and lots 1, 2, 3, 4 and 5 in block 1, all in Spruill's Addition to the City of Oswego, in said county, including the following mills, grain elevators and other buildings, dwellings, machine or repair shops, belonging to or appertaining to said flouring mills;' which mortgage also contained the following among other covenants, to wit: 'The said first party also agrees to keep all buildings, machinery and other improvements on said real estate in as good repair and condition as the same are in at this date, and shall permit no waste or removal of said buildings, machinery or other improvements, and the commission of waste shall at the option of the mortgagee render this mortgage to be due and payable.' That the conditions of said mortgage had been broken, and plaintiffs had commenced suit for its foreclosure in the District Court for Labette County, Kansas, before, and which was pending at the time of, the levy mentioned in paragraph nine of this agreed statement."

"9. That on March 1, 1891, the Oswego Roller Mills Company had personal property in the city of Oswego, Labette County, Kansas, subject to assessment and taxation, which was assessed and taxes levied thereon. That said taxes remaining unpaid, on January 15, 1892, the treasurer of said county issued his tax warrant, directed and delivered to the defendant herein as the Sheriff of said county, who thereafter, on February 22, 1892, levied the same on all the property described in paragraphs four and five of this statement of facts. That all the proceedings leading up to the issuance and levy of said warrant were regular, and said warrant authorized the levy on the property described in paragraph five herein, provided the same was, under the facts herein shown, liable to be appropriated for the payment of said personal taxes as aforesaid."

The first specification of error is that the Sheriff was not the real party in interest, and that no injunction should have been granted without making the mu-

COOK v. CONDON.                    581

Dec. 22, 1897.      Opinion.   Schoonover, J.          E. Div.

**1. Sheriff proper party.** nicipalities to which the taxes were due parties defendant. We think this position is not well taken. This was not a proceeding to enjoin the collection of taxes. It is agreed that the taxes are due and unpaid and that the tax warrant was the proper authority for collecting them. The Sheriff had simply levied the writ upon the property which the defendants in error claimed was not subject to pay the taxes, and which they were entitled to have protected on account of their mortgage. It was an action to enjoin the sale of specific property, and we think the Sheriff was the real party. If the municipalities whose rights, as an abstract proposition, were not affected by this proceeding, claimed any interest in the sale of this particular property and desired to be made parties, the way was open and **2. Defect of parties must be taken advantage of in pleadings.** clear, and not having availed themselves of this opportunity it is now too late. Where one's property is about to be appropriated by another, one need look only to the person acting, in whatever capacity. We have carefully examined the authorities cited by the learned counsel for plaintiff in error — *Coal Co. v. Crowe* ( 3 Kan. App. 288 ) and cases there cited — and are of the opinion that they are not in point. The case of *Hoisington, Sheriff, v. Brakey* ( 31 Kan. 560) in our opinion states the law of this case. If this were an action to enjoin the collection of the taxes, a different rule and principle would probably obtain.

The second specification is, in effect, that the agreed facts are silent as to the unreasonable impairment of the mortgage security by the removal of the **3. Machinery in mill is fixtures.** machinery. We think it fairly deducible, the contrary not appearing, that the security would be jeopardized and greatly impaired

by such removal. It is agreed that the articles were all necessary for the operation of the mill and were a part of one complete system. This being true, to divest the mill, which was security for such a large sum, of all the necessary machinery, and wreck the system, could but render the property valueless as a mill and most presumably greatly impair the security which defendants in error had the right to have preserved. There was no error in this.

It is insisted by counsel for defendants in error that the questions presented and determined above should not be considered by this court for the reason that they were not raised in the trial court. This contention would have controlling force if the record disclosed that as a fact, but it does not. We come now to the consideration of the principal question in the case : Was the property in controversy real or personal property? We find it difficult, if not impossible, to state an entirely satisfactory rule which will apply to all cases involving questions of this character. The term "fixtures" has been used by so many writers in such various senses and this ambiguity so often followed in adjudicated cases, that "there is inextricable confusion both in the text-books and adjudged cases as to what is such an annexation of chattels to realty as to make them part of, and pass by transfer of, the realty." The only clear thing in the midst of the darkness is, that each particular case must depend for solution upon its peculiar facts, and not upon any unrelaxing rule of law.

"An attempt to reconcile the authorities on the subject would be futile, and to review them would be an endless task." There is, however, a line of authorities at variance, as we believe, with but few of the well-considered adjudications, which when applied to

the "stated facts" in this case brings order out of apparent chaos and renders a correct solution of the question. The facts, so far as they are needful to a determination of this question, are: The Oswego Roller Mills Company was the owner of the land described in the mortgage, the "large brick building, grain elevator, offices and other buildings" situate thereon, and of the property in controversy, which latter had been purchased by that Company and placed in the building, with the intention of using it in the operation of the mill and making it permanently a part of the same; it was so used and kept continuously to the date of the Sheriff's levy; this property was all necessary to the operation of the mill; the spouts and elevator buckets were properly fitted to said machinery and attached to the floors of the building, both above and below, and all connected with the motive power by belts and pulleys, "thus making the above-described machinery, with other machinery in the mill, one complete system;" this machinery was large and heavy, separate articles weighing three thousand pounds and more, and was all attached in some manner, either by screws, bolts, cleats, braces, or pulleys and belts, to the building. Thus we have the "mill" which the Mill Company mortgaged to defendants in error to secure the debt before mentioned. We have said that the facts prove that the Mill Company intended to make the machinery a permanent improvement and part of the mill property. This is clearly shown by the fact that the mortgage, by its terms, included the "mill," which by every known definition, when used as here, includes the machinery. The mortgagor also agreed to keep the machinery "and other improvements on said real estate" in repair. Under the facts and the

authorities below cited, the property in controversy is real estate and not subject to sale on the Sheriff's tax warrant. We may further add that there are few, if any, adjudicated cases, where all the elements were present as here, opposed to our conclusion. The elements are : Unity of ownership ; annexation, actual or constructive, to the realty ; intention to make a chattel a permanent fixture ; adaptation to the use to which applied ; and last, but by no means least, the inclusion of the property in the mortgage. We cite the following authorities :

That all things used in a factory which are a part of the machinery necessary in the process of the man- ufacture, are fixtures covered by a mortgage of this character, cannot be doubted. *Huston v. Clark et al.*, 162 Pa. St. 435, 29 Atl. Rep. 866 ; *Ege v. Kilee*, 84 Pa. St. 333 ; *The Ottumwa Woolen Mills Co. v. Hawley*, 44 Iowa, 57.

A sawmill and its appointments are *prima facie* parts of the realty if there is no contrary intent or understanding. *Robertson v. Corsett*, 39 Mich. 777 ; *Davenport v. Shants*, 43 Vt. 546.

Machinery put in a mill after the execution of a mortgage becomes part of the real estate and sub- ject to the mortgage. *Gardner v. Finley*, 19 Barb. 317 ; *Johnston v. Morrow*, 60 Mo. 339 ; *Thompson v. Vinton*, 121 Mass. 139.

Where permanent annexation is intended, the arti- cle becomes a part of the realty. *Morrison v. Berry*, 42 Mich. 389 ; *Seeger v. Pettit*, 77 Pa. St. 437 ; *Wheeler v. Bedell*, 40 Mich. 693, and cases there cited ; *Dooley v. Crist*, 25 Ill. 55.

Adaptation to use and purpose is one of the tests. *Vooris v. Freeman*, 2 W. & S. ( Pa.) 116 ; *Pyle v. Pennock*, id. 390 ; *Farrar v. Stackpole*, 6 Me. 154.

A steam-engine and boiler bought by a mill owner and hauled upon the ground with the intention of placing it in mill, becomes a part of the realty. *Patton v. Moore*, 16 W. Va. 428, 37 Am. Rep. 789 ; *Stillman v. Flenniken*, 58 Iowa, 450. Character of property may generally be determined by agreement. *Fratt v. Whittier*, 58 Cal. 126 ; *Frederick v. Devol*, 15 Ind. 357 ; *Warner v. Kenning*, 25 Minn. 173 ; *Foster v. Prentiss*, 75 Me. 279 ; *Hunt v. Bay State Iron Co.*, 97 Mass. 279 ; *Sampson v. Graham*, 96 Pa. St. 405 ; *Smith v. Waggoner*, 50 Wis. 155.

Rolling stock, and other property strictly and properly appurtenant to the road, is part of the road, and covered by a mortgage which in terms embraces rolling stock ; *Farmers, etc., Trust Company v. St. Joe, etc., Railway Company*, 3 Dill. 417. See also Judge Dillon's review of Ewell on Fixtures, 4 Cent. Law Jour. 22.

The judgment of the District Court is affirmed.