## J. W. GREEN v. THE CHICAGO, ROCK ISLAND & PACIFIC RAILROAD COMPANY *et àl.*

### No. 447.

REAL ESTATE—*Fixtures—Tax Deed.* A làthe so heavy as to re-quire no fastening to hold it in place, and which was readily con-nected, when its use was desired, by a belt with an overhead shaft, and which was an essential part of the machinery of a manufacturing plant as originally planned and operated, is a part of the realty, and passes under a tax deed conveying such realty.

Error from Reno district court; F. L. MARTIN, judge. Opinion filed February 17, 1899. Reversed.

*McKinstry & Wise*, and *J. D. McCue*, for plaintiff in error.

No brief for defendants in error.

The opinion of the court was delivered by

MILTON, J.: This is an action in replevin whereby J. W. Green sought to recover from the defendant railroad company the possession of one Pond lathe and fixtures, then upon a car and about to be shipped from Hutchinson, Kan., to Des Moines, Iowa. The railroad company answered, averring that it had re-ceived the property for shipment to one E. R. Mason, and that the plaintiff and Mason each claimed to be the owner and entitled to the possession of said prop-erty. The defendant therefore asked the court to re-quire Mason to interplead in the action. Thereafter Mason filed an interplea, averring that he had acquired the property by purchase from the owner thereof, and that he was the absolute owner and entitled to the immediate possession of the property at the time the plaintiff brought this action. The case was tried by the court and judgment was entered in favor of Mason

for a return of the property, or in lieu thereof that he recover $600.

The lathe was a very large and very heavy piece of machinery, which constituted a part of the manufacturing plant belonging to the South Hutchinson Barb Wire and Manufacturing Company, a corporation organized by Ben. Blanchard, who was its first president. The plant was operated for a few weeks after it was first opened in 1887, and thereafter the lathe was occasionally used. Ben. Blanchard bought the machinery from E. R. Mason, removed it to Hutchinson, erected the buildings, incorporated the manufacturing company, and became the owner of all but four or five shares of the capital stock thereof. He gave his own notes to Mason for the machinery and afterward the company gave its notes, secured by a real-estate mortgage covering the manufacturing plant, in lieu of the Blanchard notes. Mason transferred the notes and mortgage to the Iowa National Bank, which afterward foreclosed the mortgage. The sale of the mortgaged property under foreclosure took place in July, 1892, and was confirmed on the 7th of September of that year.

In the preceding June, James Blanchard, the secretary of the company, executed and delivered to Mason, with the consent of the said bank, a bill of sale of the lathe and other machinery belonging to the manfacturing company, for a consideration stated at $300. Blanchard purported to execute this instrument as the president of the company. He was not authorized by the directors of the corporation to make the transfer, and such transfer was not afterward ratified by the directors. The last meeting of the directors was held in January, 1891. In February, 1893, Mason caused the lathe to be removed from the building in

which it had stood for several years, and placed upon a car for shipment. It was then replevied, as already stated.

At the tax sale of 1889, the plaintiff Green purchased the lots on which the manufacturing plant was situated for the taxes of the preceding year, and afterward paid the taxes levied against said property for the years 1889, 1890, and 1891, as the same became due and payable. The whole amount of said taxes and interest thereon was $1046.48 on September 10, 1892, when a tax deed was duly issued to plaintiff, and such deed was on the same day duly recorded. Baxter & Baker were then in possession of the premises so conveyed, under an arrangement made between them and James Blanchard, who had general charge and supervision over the property. The sheriff's deed was issued in the foreclosure action on the 21st day of September, 1892, H. W. Gleason, attorney for the bank, being named as the grantee in the deed. We have not been favored with a brief on behalf of the defendants in error.

As the lathe weighed about three tons, it required no fastenings to hold it in place. It was readily connected, when its use was desired, with a belt wheel on an overhead shaft. It was an essential part of the machinery of the manufacturing plant as originally planned and as at first operated. We think it was a fixture, within the doctrine heretofore declared by our supreme court and by this court. See *Cook v. Condon*, 6 Kan. App. 574, 51 Pac. 587. Being a part of the realty, the lien for taxes, evidenced by the tax-sale certificate, was on the lathe as on other parts of the realty. Assuming that the bill of sale was made by James Blanchard with authority (a violent assumption under the facts in the record), such bill of sale

did not of itself operate to sever the lathe from the realty, and the machine was still in place and a part of the realty when the tax lien ripened into a tax deed whereby the entire property was conveyed to the plaintiff.

The deed appears to be valid on its face, and it was not attacked in any way. It must therefore be treated as an absolute conveyance of the legal title, and we must hold that thereunder the plaintiff became entitled to the possession of the entire property as it stood on September 10, 1892. The subsequent removal of the lathe by Mason was a trespass on the realty. If it be held that by reason of the severance of the lathe from the realty it became personal property, it could properly be retaken in a replevin action, as was decided by the supreme court in the case of *Cent. Branch Rld. Co. v. Fritz*, 20 Kan. 430.

The judgment of the district court will be reversed.