**MANUFACTURERS BANK & TRUST CO. OF ST. LOUIS v. LAUCHLI**
(two cases).

Nos. 11715, 11716.

Circuit Court of Appeals, Eighth Circuit.
April 2, 1941.

Rehearing Denied April 22, 1941.

608

Milton Yawitz, of St. Louis, Mo. (Rassieur, Long & Yawitz, of St. Louis, Mo., on the brief), for appellant.

Harry S. Gleick, of St. Louis, Mo., for appellee.

Before STONE and GARDNER, Circuit Judges, and OTIS, District Judge.

STONE, Circuit Judge.

These appeals are by a mortgagee from two separate orders authorizing sales by the trustee of the bankrupt J. H. Belz Provision Company of certain property "free and clear of any right, title or interest" of the mortgagee. The property covered by each of the two orders is entirely different but because the same mortgage is involved and because the various properties are within the same bankrupt estate, it has been found convenient to present the two matters together, although upon separate records and briefs. While the underlying issue in both cases is whether the mortgage covers the property included in each of the two orders, yet the situation and resulting issues are so different in the two cases that it is necessary to consider them separately. However, there are certain facts common to both cases which may be stated before taking up the separate situations.

These common facts are as follows. J. H. Belz Provision Company is a corporation which, prior to bankruptcy, conducted a pork and beef packing business in a three-story plant owned by it in St. Louis, Missouri. In April, 1934, it executed a mortgage deed of trust, to secure bonds aggregating $91,000 upon its real estate and packing plant located thereon. After conveying described real estate, this instrument continued:

"Together with all and singular the buildings and structures, power plants, boiler houses, office buildings, refrigerating, electric and other machinery, apparatus, engines, boilers, generators, switch boards, dynamos, elevators, shafting, belting, pulleys, vats, tanks, conveyors, tools, implements and fixtures, and any and all equipment, erected thereon, or in process of erection, or which may be hereafter erected in or upon any of the real estate hereinabove described and constituting the packing plant and property and office of the J. H. Belz Provision Company, it being the intention hereof that the conveyances of this mortgage deed of trust shall include as part of said real estate all the buildings, machinery, tools, fixtures, equipment and appliances erected on or used as part of said plant, or which may hereafter be so erected or used.

"To Have and To Hold the above described real estate and other property, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining, the reversion and reversions, remainder and re-

mainders, rents, issues and profits thereof, and all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well at law as in equity, in and to the same, and every part thereof, including all rights, privileges, benefits and advantages accruing or to accrue under any contract with any railroad with reference to or for the use of any switch or switches which may hereafter be connected with any of the above property, unto the Party of the Second Part, its successor or successors in trust and its assigns, forever."

At the time the above mortgage was executed, a "rendering" department was an integral part of the packing plant. The purpose of this department was to convert inedible portions of slaughtered animals into commercial products. The process of such conversion then being used was known as a "wet" system. In 1937 and in 1938, this "wet" system was replaced by what is known as a "dry" system. While some of the old equipment was used in this "dry" system, some thousands of dollars worth of new equipment was necessary. The greater part of this new equipment was purchased under two instalment payments conditional contracts whereby title was retained in the sellers until full payment.

Thereafter (the record does not disclose when), the Belz company went into bankruptcy. At that time, $4,951.26 had been paid on one of the contracts, leaving a balance of $1,583.30 due. The record does not disclose the purchase price under the other contract nor the amount paid thereon but only the balance due of $2,153.84.

Included in this equipment bought under the above two contracts, were tanks of various kinds, pumps, cookers, conveyors and crushers. Some of these things were large and weighed thousands of pounds— two of the tanks weighed about twenty thousand pounds each. Various parts of this equipment were installed on each of the three floors of the plant and seem to have been connected by conveyors, pipes or pumps. To install this equipment, a concrete foundation therefor was built on the first floor; the floors changed from wood to reinforced concrete and one or more floor openings cut. The machines on the first floor were attached to the concrete foundations by bolts. Some of the tanks on upper floors were supported on legs sunk into the concrete flooring. This new system constituted the only rendering sys-

tem in the plant and was a part of the plant and process.

From the above fact situation arise two contentions regarding the inclusion under the mortgage of the devices bought under the two conditional sales contracts. The first contention is that this is a real estate mortgage and that this property was not so affixed to the real estate as to be fixtures and, therefore, never passed under the mortgage. The second is that these devices could not pass under the mortgage because the title thereto remained in the sellers since full payment had been made under neither conditional sales contract. As to both of these contentions it must be kept in mind that the contest here is solely between the mortgagee and the trustee standing in' the shoes of the mortgagor.

■ As to the fixture contention. The above quotations from the mortgage are clear that it was intended to and did cover not only the real estate and buildings but generally, "any and all equipment, erected thereon, or in process of erection, or which may be hereafter erected in or upon any of the real estate hereinabove described and constituting the packing plant and property and office of the J. H. Belz Provision Company, it being the intention hereof that the conveyances of this mortgage deed of trust shall include as part of said real estate all the buildings, machinery, tools, fixtures, equipment and appliances erected on or used as part of said plant, or which may hereafter be so erected or used." In short, this mortgage covered the then existing going plant and all after-acquired machinery, etc., erected on this real estate or used as part of such plant.

There can be no dispute that a "rendering" department was an integral part of this plant when the mortgage was executed nor that the then equipment of such department was covered by the mortgage. All of the things covered by this order of sale are parts of a rendering department installed on this real estate to replace those which constituted the same department at the time the mortgage was made.

■ We need not discuss the character of attachment of these things to the real estate in so far as removability without injury to the real estate or buildings. It is clear that all of them were, in some manner, attached. The here governing law of Missouri is that where a mortgage is upon a

plant, with the equivalent of an after-acquired clause, machinery placed in the plant thereafter and constituting a part of the plant, becomes 'subject to the mortgage. Johnston v. Morrow, 60 Mo. 339, cited with approval in Cook v. Condon, 6 Kan.App. 574, 51 P. 587, 590. This contention must, therefore, be resolved in favor of appellant.

As to the second contention, that is, that the things purchased under the conditional sales contracts did not pass under the mortgage because the title thereto never passed to the mortgagor but remained at all times in the sellers. If no property right or. interest of any kind, legal or equitable, to these things ever passed to the mortgagee then, obviously, nothing could pass under the mortgage because all claim thereto under the mortgage must come through the mortgagor. But if any kind of legal title or interest did so pass to the mortgagor that title or interest came under the mortgage because the mortgage expressly covered "all the estate, right, title, interest, property, possession, claim and demand whatsoever, as well at law as in equity, in and to the same, and every part thereof."

■ It is the general rule that although the buyer cannot convey or encumber property possessed under a conditional sale contract in such manner as to defeat the title retained in the seller, yet he does acquire an interest, which has been variously described, in the property and he ·may, without consent of the seller, sell, mortgage or give away such interest prior to forfeiture under the contract—subject, of course, to the seller's rights therein. 55 C.J., p. 1212, § 1199, and cases in notes thereto; Fosdick v. Schall, 99 U.S. 235, 251, 25 L.Ed. 339; Witherspoon v. Choctaw C. & M. Co., this Court, 56 F.2d 984, 988; J. D. Pittman Tractor Co. v. Bolton, 238 Ala. 300, 191 So. 360, 362; Gas City Transfer Co. v. Miller, Ind.App., 21 N.E.2d 428, 431, 432; Hayes ·v. Frank Rowe, Inc., 181 Okl. 598, 75 P.2d 882, 884; Harvey v. Anacone, 134 Me. 245, 184 A. 889, 890; Package Confectionery Co. v. Perkit, 281 Mass. 554, 184 N.E. 166, 167; Hyland v. Hyland, 278 Mass. 112, 179 N.E. 612, 614; Walker v. Houston, 215 Cal. 742, 12 P.2d 952, 953, 954, 87 A.L.R. 937, and see Franklin Sav. Bank v. Garot, this Court, 69 F.2d 487, 491. The buyer has an insurable interest. 26 C.J. p. 32, § 14 and notes; 24 R.C.L. p. 498, § 791 and notes; Stallings v. Fidelity-Phenix F. Ins. Co., 306 Ill.App. 235, 28 N.E.2d 322; Coffin v. Northwestern M. F. Ass'n, 43 Idaho 1, 249 P. 89, 90, 48 A.L.R. 1225; Tabbut v. American Ins. Co.,

185 Mass. 419, 70 N.E. 430, 431, 102 Am. St.Rep. 353; Phenix Ins. Co. v. Hilliard, 59 Fla. 590, 52 So. 799, 800, 138 Am.St.Rep. 171.

■ There is not cited nor have we been able to find a Missouri decision in point. However, there is a Missouri statute which may indicate the State policy. Mo.St.Ann. § 3126, p. 1965, makes it unlawful for a conditional sale seller to take possession of the property without tender to the buyer of the amount paid less "a reasonable compensation for the use of such property, which shall in no case exceed twenty-five per cent. of the amount so paid." This is a mandatory requirement. American H. & D. Co. v. Trustees & Registrar Corp., Mo.App., 27 S.W.2d 437, 438. It would seem that the State would not require at least seventy-five percentum of the payments made to be paid back in order for the seller to re-possess, unless it regarded the buyer as having some kind of legal interest which it sought to protect in this manner.

■ In the absence of any State decision and strengthened by what is seemingly an indication of the State policy as revealed in the above statute, we apply the rule as laid down, in the above decisions, by the Supreme Court, this court and the great weight of the decisions of various of the States. We hold that there was here a legal or equitable interest that could be encumbered. Since this mortgage expressly covered all manner of legal or equitable interests, this property purchased through these two conditional sales contracts passed under the mortgage, subject only to the rights of the sellers as set forth in those contracts. If the mortgagee should tender the full balances due under these contracts, the property would be freed therefrom and pass fully under the mortgage.

The order involved in this appeal should be set aside.

### Appeal No. 11716.

The things covered by the order questioned in this appeal are entirely different from those treated above in case No. 11715. They are numerous and varied.

The contention of appellant is: "that all of these things are part of an entire plant, and, being such, they are fixtures, not only by virtue of the law, but by virtue of the express contract of the mortgagor as set out in the mortgage of April 1, 1934, distinctly saying so: 'It being the intention hereof that the conveyance of this mort-

gage deed of trust shall include as part of the real estate all buildings, machinery, tools, fixtures, equipment and appliances erected or used as part of said plant or which may hereafter be so erected or used.' "

We understand that appellant is not claiming that this mortgage is a chattel mortgage. Its claim is really that this was a real estate mortgage on an entire plant with all of its equipment and that these things are part of such equipment. Therefore, the issue is whether these things are fixtures.

The tests to determine whether a thing is a fixture are, in Missouri, stated thus: "If there be a question * * * as to an agreement that it shall become a fixture, the tests have been said to be: (1) Real or constructive annexation of the property in question to the soil; (2) adaptation of the property in question to the ordinary use or purposes of the land to which the alleged fixture is annexed; and (3) the intention of the party making the annexation to make the property in question a permanent accession to the freehold. * * * And of these three unities the question of intention is said to be controlling." Hatton v. Kansas City, C. & S. Ry. Co., 253 Mo. 660, 162 S.W. 227, 233. The same measure is more concisely stated as "annexation, adaption, and intent, with the latter ordinarily of paramount inportance." Matz v. Miami Club Restaurant, Mo.App., 127 S.W. 2d 738, 741. Also see American Clay Machinery Co. v. Sedalia Brick & Tile Co., 174 Mo.App. 485, 160 S.W. 902.

Applying these tests, we need spend little effort upon the "adaptation" test because it is clear that all of them were adapted to and were used in the operation of the plant although some of them were not necessary therefor. Also, the "intention" test is not difficult because, with one exception ("1 Winch and Hoist Tower with Motor"),[1] they were bought for and intended to be used permanently in connection with the operation of or with the business of the plant. Also, the mortgage was expressly upon "the packing plant and property and office" of the mortgagee and was to cover "all the * * * machinery, tools, fixtures, equipment and appliances erected on or used as part of said plant, or which may hereafter be so erected or used."

[7] The "test" requiring most attention is that of "annexation" to the realty. We think the application of this test should be governed by the two practical considerations of (1) character of physical annexation (attachment) to the plant having permanent usage in view, and (2) the effect upon the plant as a complete unit of the presence or absence of the particular thing. Such application will eliminate all purely personal property and will include all attached property reasonably necessary to operation of the complete plant as it was being operated as a unit. These numerous things are classified, in the order of the Referee (which was confirmed), as follows: (1) "Office Fixtures and Equipment", (2) "Board of Directors Room", and (3) "Plant Equipment, Machinery and Fixtures".

The result of so applying this "test" is as follows. As applied to the things listed under the heading "Office Fixtures and Equipment" the results are that the items "6 Light Fixtures" and "1 Unit Cooler with Circulating Pump (Air Conditioning)" are held to be under the mortgage and all other things in this classification not to be under the mortgage.

As to things listed under "Board of Directors Room", none is held to be under the mortgage.

As to things listed under "Plant Equipment, Machinery and Fixtures", the mortgage is held to cover the following: 2 10-Ft. Super-Cold Refrigerators Floor Case, 1 Buffalo 66B Sausage Grinder with Motor 20 Horse Power D. C., 2 Hog Tracks Scales Weightograph, 1 Hanging Toledo Scale, 1 Tank Pump, 1 Cincinnati Butcher Lard Roll, 1 Skinner Motor Cooling Unit and Motor, 1 Large Motor and Brine Pump D. C., 1 Slip Ring 150 H. P., A. C. Motor. All other things under this heading, held not within the mortgage. The article, "1 Winch and Hoist Tower with Motor" does not come under the mortgage because clearly intended for temporary construction work use—its use in conveying inedible products to the second floor being merely a temporary expedient during such construction work.

---

[1] This winch and hoist with motor was "just a concrete hoist" intended for temporary use in remodeling the tank house. This tank house was never completed so the hoist was used also to "get some of the inedible products into the second floor before the building was completed".

Since this order covered all of the things; since we exclude some of them; and since we cannot tell the effect of our views upon the sale of those things (not excluded by us) alone, we think this situation can best be met in a practical way by setting aside the order without prejudice to a future application by the trustee, if he be so advised, for an order to sell such of the above things as we have held not to come under the mortgage.