## In re INGLIS.

No. 8266—Opinion Filed Aug. 14, 1917.

Rehearing Denied Jan. 22, 1918.

(169 Pac. 1083.)

1. **Taxation — Assessment — Notice of Change — Statute.**

A taxpayer who appears before the county board of equalization and objects to a raise by the county tax assessor in the valuation of his property over the amount fixed in a verified list filed by him with such assessor, and whose objections are heard and determined by the board of equalization, cannot complain because the assessor did not furnish him with copy of schedule showing raise in valuation; it appearing that, several weeks before the return of the assessor and before the meeting of the board of equalization

such taxpayer was permitted to examine the assessor's records, and file and make copies of the valuations of his property as made by the assessor.

**2. Same—Appeal—Exceptions.**

Where a taxpayer duly appeals to the district court from the action of a county board of equalization as to the valuation of his property, and a trial is had de novo and judgment rendered in the district court, from which appeal is taken to this court, objections to testimony received by the board of equalization cannot be considered by this court, the exceptions preserved in the trial had in the district court being presented for consideration, and not the proceedings before the board of equalization.

**3. Taxation—Assessment of Realty—Owner —Liens.**

Real estate should be assessed in the name of the legal owner at its fair cash value, without any deduction in assessed valuation because of mortgage liens against the same.

(Syllabus by Stewart, C.)

Error from District Court, Oklahoma County; Geo. W. Clark, Judge.

Application by Frank Inglis for the reduction of the assessed valuation of real estate. From a judgment of the district court on appeal from the action of the county board of equalization, applicant brings error. Affirmed.

E. E. Blake, for plaintiff in error.

John Embry, Co. Atty., and Paul Van Winkle, Asst. Co. Atty., for defendant in error.

Opinion by STEWART, C. The appellant, Frank Inglis, as authorized by statute, prepared a verified list of real property owned by him in Oklahoma county for the year 1914, fixing a valuation thereon of $28,050, and filed the same with the county tax assessor. The assessor refused to accept the valuation placed on the property by the appellant, and caused the same to be assessed for $98,250, making due return to the county board of equalization; the county tax assessor did not himself prepare a copy of the schedule as corrected and give the same to the appellant, Inglis, but several weeks prior to the date of the assessor's return to the county board of equalization the appellant was permitted to examine the records in the county assessor's office and he made copy of all changes in valuation placed upon such property by the assessor, copying the assessments as made by the county assessor. The appellant afterwards appeared before the county board

of equalization and made complaint as to the assessor's valuation. The county board of equalization lowered the valuation to the extent of $15,000; an appeal was taken by Inglis to the district court where trial was had, and the valuation fixed at $67,850. It appears from the evidence that the property was incumbered by mortgages to the extent of $20,150; however, the district court did not take into consideration the mortgages and in fixing the valuation no deduction was made because of such mortgages. Counsel for appellant in his brief says that the appeal presents but two questions:

"(1) Whether or not the appellant's assessment list verified, returned, and filed was conclusive upon the taxing officers without notice being given to him of a proposed change or revaluation thereof.

"(2) Whether the appellant owning a mortgagor's equity worth $28,000 in the real estate valued at $67,000, is taxable at the value of the property which he owns and could sell, or is taxable to the full extent of the value of the specific pieces of land, as though free and unincumbered, and without regard to the extent and value of interest therein held by the mortgagee. Or, otherwise expressed, the question is, if A. owned a lot worth $10,000, mortgages it to B. for $5,000, and then transfers his interest to C. for $5,000, is C. taxable ad valorem on the value of what he bought, $5,000, or on the value of the lot $10,000?"

The statutes authorize the owner of property to make a verified list of his property with the value thereof and deliver to the assessor; there is nothing in the statutes, however, which, in any event, renders such return by the owner conclusive as to valuation. The statute reads:

"All property is to be valued to the assessor, by the person whose duty it is to list the same, but the assessor may place a different value on the same if he is satisfied that the value so given is not correct and he shall give to the person so listing the same a copy of the schedule; and the assessor shall seek to have assessed the same classes of property at a uniform value throughout the county." Rev. Laws 1910, § 7324.

The copy of the schedule is not required to be furnished at any particular time by the terms of the statutes; we take it, however, that it is the duty of the assessor to furnish the same before making return to the county board of equalization. While in this case it does not appear that the assessor made a copy of the schedule and gave the same to the appellant, the appellant several weeks before the assessor's return to the county board of equalization made copies for himself of the schedule, without de-

manding that the tax assessor furnish the same. The appellant, having had the information required by law in due time to protect his interests, cannot be heard to object that the assessor did not furnish him with such schedule, especially in view of the fact that the appellant appeared before the board of equalization and duly presented his claim to such body. But the appellant urges with much vehemence that the county board of equalization, because of general dissatisfaction as to valuations of property in Oklahoma City, caused two persons to go out and value real estate in the section of the city where the property of the appellant is situated, making their estimate as to value, and that such board acted upon the information furnished by such persons so sent out. We are of the opinion that the method pursued by the board of equalization in ascertaining the value of the property for the purpose of being assessed cannot be inquired into by this court. The board had the right to avail itself of any legitimate means of ascertaining the value of the property. But we are not permitted to review here the evidence before the board, as a trial was had de novo in the district court. The only objections we can consider must therefore relate to the action of the district court.

The trial court in its conclusions finds that the property should be assessed to the appellant, Frank Inglis, in his name, as the owner thereof, for the purpose of taxation without any deduction because mortgage indebtedness against any of said property to which action of the district court the appellant excepted. The action of the court in this respect is the only matter now left for us to consider.

We have read with much interest the unique and unusual, albeit able and exhaustive, brief of counsel for appellant. Many anomalous conditions with reference to our tax law are suggested, with the characteristic satire and acuteness of the learned counsel who wrote the brief. We have been more than interested, we have been entertained, by following the ingenious argument made. That our system of taxation is, at best, imperfect, many times ineffectual, and never harmonious must be admitted by any careful student of the subject. Were this court vested with legislative rather than judicial powers we might attempt, but could not guarantee, a solution of this ever-recurring and much-vexed question, which, like Banquo's ghost, "will not down."

We are called upon by the appellant in this case to wipe out by what, we think, would amount to judicial legislation a system of taxation of real estate which in this jurisdiction and most of the jurisdictions of our country is time-worn and time-honored. It is suggested that the mortgagee has an interest and estate in the land mortgaged, and that, while the mortgagor holds the legal title, the mortgagee has an equitable title; that such interest, for the purpose of taxation, should be separated, and that each person interested should pay taxes proportionate to their respective interests. Counsel even goes so far as to claim that, if the mortgage equals the value of the property, the same should not be taxed to the legal owner at all, and that, in case mortgaged land, assessed only to the mortgagor, is sold for taxes, the purchaser at the tax sale would acquire the title subject to lien of the mortgagee. In the case of In re Indian Territory Illuminating Oil Co., 43 Okla. 307, 142 Pac. 997, the court says:

"The Legislature has not provided for a severance of the various interests which may be held in real property for purposes of taxation."

And in such opinion real property is defined as:

"The land itself, and all buildings, structures, and improvements or other fixtures of whatsoever kind thereon, and all rights and privileges thereto belonging or in any wise appertaining, and all mines, minerals, quarries and trees on or under the same."

A mortgage upon land in this state is a mere lien, and gives to the mortgagor a right of foreclosure in order to enforce the payment of the obligation secured. Our Legislature has never declared that such lien constitutes any title to the land. The mortgagee has no title to the land unless purchased by sale under foreclosure of the mortgage. Our statutes require that real estate, as other property, shall be assessed in the name of the owner, hence we are of the opinion that, however great the apparent hardship, there is no escape, and the legal owner of the land is liable for the entire taxes on the same.

In 27 Cyc. page 1153, it is said:

"A mortgagor in possession is considered as the owner of the land, and it is his duty to pay the taxes and assessments levied thereon."

In support of the text the following authorities are cited: Medley v. Elliott, 62 Ill. 532; Ralston v. Hughs, 13 Ill. 469; Morrison v. Hampton (Ky.) 49 S. W. 781; Beltram v. Willere (La. Ann.) 4 South. 506; Williams v. Hilton, 35 Me. 547, 58 Am. Dec. 729; Fuller v. Hodgdon, 25 Me. 243. It is further stated in the text:

"If he neglects or refuses to do so, it becomes the right of the mortgagee to pay

them and be reimbursed therefor"—citing Wright v. Langley, 36 Ill. 381; Leitzbach v. Jackman, 28 Kan. 524; Stanclift v. Norton, 11 Kan. 218; Townsend v. J. I. Case Threshing Mach. Co., 31 Neb. 836, 48 N. W. 899.

In Price v. Salisbury, 41 Okla. 416, 138 Pac. 1024. L. R. A. 1917D, 520. this court says:

"A person holding a mortgage upon real estate, as security for a debt is under no obligation to pay the taxes upon such property unless there is some provision in the mortgage requiring him to do so."

While Price v. Salisbury, supra, is not squarely in point, yet the principles involved in that case apply to the case at bar. It was held that, in event of a sale of land for taxes assessed to the legal owner thereof, the mortgagee acquired title to the land by purchasing the same at tax sale and securing a tax deed, it being assumed by the court that, under the law, the taxes on the value of the land itself were a just charge against the legal owner thereof. The same is held in Jones v. Black, 18 Okla. 344, 88 Pac. 1052, 90 Pac. 422, 11 Ann. Cas. 753. It is said in Balduff et ux. v. Griswold, 9 Okla. 438, 60 Pac. 223:

"A mortgage upon real estate creates only a lien in favor of the mortgagee, and the legal title does not pass until after foreclosure and sale."

The leading case cited by counsel for appellant in support of his proposition is Savings & Loan Society v. Multnomah County, 169 U. S. 421, 18 Sup. Ct. 392, 42 L. Ed. 803. In such cases the Supreme Court of the United States upheld a statute of the state of Oregon which provides that a mortgage on land shall be taxed as real estate and that such mortgage vests in the mortgagee a taxable title and property in the land. The provision of the law of Oregon which authorizes the mortgagor to deduct from his debt taxes paid by him which should have been paid by the mortgagee is sustained.

We do not question the power of the Legislature to thus fix the status of a real estate mortgage and to vest in the mortgagee title in the land to the extent of his mortgage, but this our Legislature has never done.

A later case decided by the Supreme Court of the United States, Paddell v. City of New York, 211 U. S. 446, 29 Sup. Ct. 139, 53 L. Ed. 275, 15 Ann. Cas. 187, more aptly applies to the laws and the custom existing in this state. We quote at length from the opinion of the court in the Paddell Case, supra:

"The plaintiff has many difficulties in his way. In the first place the mode of taxation is of long standing, and upon questions of constitutional law the long settled habits of the community play a part as well as grammar and logic. If we should assume that, economically speaking, the present system really taxes two persons for the same thing, the fact that the system has been in force for a very long time is of itself a strong reason against the belief that it has been overthrown by the Fourteenth Amendment, and for leaving any improvement that may be desired to the Legislature. The weight of the plaintiff's argument is that he is taxed for what he does not own. The bill seems to have been drawn on the dominant notion of a right attached specifically to the mortgaged property, that is to say, the notion that the property represents so many units of value from which the mortgage subtracts so many, leaving only the remainder subject to be taxed; and this is the plaintiff's view. But there is a subordinate averment that the plaintiff has not been assessed for taxes in respect of personal property, and the allegation seems to convey, by indirection, that no deduction of the mortgage debt has been made from personal property, and to admit that such a deduction would have set the city right. As to the former notion, it will be observed that the mortgages were given by the plaintiff, and therefore charged him, as well as his land. If he should die, by the law of New York his personal property would have to exonerate the realty, so far as it would go. If he lives, and remains solvent, the chances are that he will pay the mortgages out of personalty. Therefore the true deduction is not the amount of the mortgages, but the speculative chance that the land may have to be sold for the debt—a chance that would be insured at different rates to different persons. The other theory regards the mortgage debt as a deduction from total riches, to be compensated by an allowance to them indifferently, either in the valuation of the land or by a deduction from personal estate. And this logically leads to the conclusion that no scheme of taxation is constitutional that does not make allowance for all obligations and debts; a conclusion that the plaintiff seems to accept, while he does not make it plain that he does not receive both in law and in fact such an allowance by a deduction of debts from personal estate. It cannot matter to the plaintiff's argument whether the obligation is directed to a specific object or to the whole mass of objects owned by the party bound. In the one case, as much as in the other, the obligation will take certain units of value from his riches, when under the compulsion of the law it is performed. But it is an amazing proposition of constitutional law that the law cannot fix its eye on tangibles alone and tax them by present ownership without regard to obligations that, when performed would make some of them change hands; for instance, that under the Fourteenth Amendment a man having 1,000 sheep as his only

property could not be taxed for their full value without allowance for an unsecured debt of $5,000, even if his creditors should be left untaxed, a matter that hardly would concern him. Bell's Gap R. R. Co. v. Pennsylvania, 134 U. S. 232, 237 [10 Sup. Ct. 533, 33 L. Ed. 892]; Merchants' & Manufacturers' Nat. Bank v. Pennsylvania, 167 U. S. 461, 464 [17 Sup. Ct. 829, 42 L. Ed. 236]; People v. Barker, 155 N. Y. 330, 333 [49 N. E. 940]. Undoubtedly he would be taxed for more than he owned if his total riches were computed on the footing that the law would keep its promise and make him pay, and that what would be done should be treated as done. If he owned other property, still there would be the chance that the sheep might be seized on execution, and, as we have said, the liability of the mortgaged land is no more, although the chance may be greater. It is a sufficient answer to say that you cannot carry a constitution out with mathematical nicety to logical extremes. If you could, we never should have heard of the police power. And this is still more true of taxation, which in most communities is a long way off from the logical and coherent theory. And it may perhaps be doubted whether there is ever a logical objection to the sovereign power giving notice to all persons who may acquire property within its domain that when it comes to tax it will not look beyond the tangible thing, and that those who buy it must buy it subject to that risk."

The reasoning of the learned justice who wrote the opinion meets the argument of counsel for appellant. The court held that the assessment of real estate at its cash value without deduction for mortgages was valid under the laws and customs of New York and was not in violation of the Constitution. The holding is in accord with our laws and customs and the same meets our approval.

The judgment of the district court of Oklahoma county is affirmed.

By the Court: It is so ordered.