THE ATLANTIC REFINING COMPANY *vs*. HYMAN FEINBERG.

1. REPLEVIN—ACTION OF "REPLEVIN" DEFINED.

   The action of "replevin" lies for the possession of goods and chattels unlawfully detained from the owner or the person entitled to possession thereof; the primary object of the action being the recovery of the property itself, with the damages for the taking and detention thereof, and the secondary and usual object being the recovery of a sum of money equivalent to the value of the property.

2. FIXTURES—DEFINED.

   A "fixture" is a thing which, though ordinarily a movable chattel, is by reason of its annexation to land regarded as a part of the land, partaking of its character and belonging ordinarily to the person or persons owning the land.

3. FIXTURES—PURCHASER OF LAND WITHOUT NOTICE OF AGREEMENT AS TO CHATTEL ANNEXED NOT BOUND THEREBY.

   Purchaser of land to which a chattel has been annexed is not bound by an agreement between the previous owner of the land and the owner of the chattel that annexation should not change the legal character of the chattel or affect its ownership, without notice or knowledge of such agreement, but is entitled to the chattel so annexed as a part of the land.

4. FIXTURES—GASOLINE PUMP EQUIPMENT HELD ATTACHED TO LAND.

   If any substantial part of a gasoline tank, pump, and equipment necessary for the use thereof was fastened or attached to land, everything used in working it is to be considered as so attached.

5. FIXTURES—KNOWLEDGE OF AGREEMENT AFFECTING FIXTURES IMPORTS KNOWLEDGE OF PROVISIONS.

   Notice or knowledge on the part of a purchaser of real estate relative to an agreement respecting the title to fixtures on the premises purchased, being

in some person other than the owner of the real estate, is actual notice or knowledge of the fact, or such information of a reliable matter with respect to the ownerhip as would impose on him the duty of making inquiry as to the actual ownership of the fixtures.

6.   FIXTURES—NOTICE OF FACT PUTTING ON INQUIRY AS TO OWNERSHIP OF FIXTURES IS SUFFICIENT.

Any notice or knowledge of any fact that would put purchaser of land on inquiry as to the ownership of the fixtures thereon would place a duty on him to inquire and ascertain, if possible, the true owner.

7.   EVIDENCE—"PREPONDERANCE OF EVIDENCE"IS GREATER WEIGHT, AND NOT NUMBER, OF WITNESSES.

By "preponderance of evidence" is meant the greater weight of the evidence, and not necessarily the greater number of witnesses.

8.   EVIDENCE—DUTY OF JURY IN DETERMINING CREDIBILITY OF WITNESSES STATED.

In ascertaining the credibility of witnesses the jury should give due regard to the manner in which the witnesses appeared upon the stand, their apparent fairness or bias in giving their testimony, and their knowledge and recollection of the facts to which they testified.

9.   REPLEVIN—PLAINTIFF TO BE AWARDED VALUE OF PROPERTY, IF POSSESSION CANNOT BE HAD.

In replevin action, if the goods are not in condition to be returned to the plaintiff, he must be awarded the value thereof.

10.   FIXTURES—NOTICE OF VENDOR'S AGREEMENT AS TO CHATTEL HELD FOR JURY.

In replevin by seller of gasoline pump, attached to buyer's land under agreement reserving title in the seller until payment of purchase price in full against a third person, who claimed to have purchased them without notice of such reservation of title, and that the pump was a fixture attached to the land, where there was testimony tending to prove that the third person had notice that the pump and equipment was the property of the seller, the question whether he was a *bona fide* purchaser without notice *held* properly submitted to the jury.

(*December* 2, 1920)

RICE, J. sitting.

*John P. Nields* for plaintiff.

*Aaron Finger* for defendant.

Superior Court for New Castle County, November Term, 1920.

REPLEVIN, No. 106, May Term, 1920.

Action by the Atlantic Refining Company against Hyman Feinberg.   Verdict for plaintiff.

The facts and questions presented appear in the charge of the Court.

RICE, J. (charging the jury). This is an action of replevin brought by Atlantic Refining Company, the plaintiff, against Hyman Feinberg, the defendant, to recover the possession or value of a gasoline tank, pump and equipment, which the plaintiff claims the defendant unlawfully detained from it.

The sheriff, under the writ of replevin issued in this case, replevied the property in question, but upon a claim of property the defendant gave a property bond and the sheriff left the goods in question in the possession of the defendant.

The plaintiff claims that some time prior to June, 1919, it entered into a contract with one Andrew Johnson, the then owner and proprietor of a garage business located at the southwest corner of Second and French streets in the city of Wilmington, under the terms of which agreement the plaintiff was to place at Johnson's place of business a gasoline tank, pump and eqjipment, with the right on the part of Johnson to purchase the same at a price aggreed upon.

The agreement, in substance, is as follows:

"This agreement made at Wilmington, Delaware, this seventeenth day of October, 1917, by and between the Atlantic Refining Company, hereinafter known as licensor, and French Street Garage, Andrew Johnson, proprietor, of Wilmington, Delaware, his heirs, executors, administrators, successors or assigns, hereinafter known as licensee, witnesseth, that licensor, in consideration of the purchase of gasoline by the licensee from the licensor, does hereby agree to furnish and lend to the licensee a complete gasoline service systen, as follows:

One twenty-barrel G. & B. gasoline tank, 14 gauge................  $185.00
One T. V. No. 35 pump complete with meter, hose and light sign.....   300.00
                                                                    ————————
                                                                     $485.00

"It is expressly agreed that said gasoline service system shall at all time (except if purchased by licensee and paid for in case at the price herein agreed upon) be and remain the property of the licensor, and that it shall be used by the licensee only for the purpose of holding and storing gasoline purchased from the licensor, and if the licensee shall, at any time, cease to purchase all gasoline stored therein from the licensor, or upon discontinuance by the licensee of the purchase of gasoline from the licensor, of if the licensee shall fail to make payments for said gasoline as agreed upon, or shall use said gasoline service system for the storage of gasoline purchased from any other party, or for any purpose other than the storage of gasoline purchased from the licensor, or upon the issuing of any attachment, execution, distress for rent, or like process against the licensee, or in event of the licensee becoming financially embarassed or involved, insolvent or involved in bankruptcy, may,

without notice to the licensee, take immediate possession of said gasoline service system without let or hindrance, and with or without process of law, without the licensor or its agent or agents, or the officers of the law, being in any way liable for any claim for damage or injury in the removal of said gasoline service system. The licensor is further authorized, at his option, upon default by the licensee, to enter an amicable action of replevin for the recovery of said gasoline service system by the filing of a copy of this agreement, together with an affidavit as to default, without any security or bond being entered by the licensor, or at its option, the licensor may charge the licensee with the sum of four hundred and eighty-five dollars, which it is agreed is the fair and reasonable market price and value of said gasoline service system, and thereupon said sum shall immediately become due and owing by the licensee and the licensee hereby agrees to pay the same.

"No payment of money by licensee, and no action of the licensor in charging the licensee with the agreed price and value of said gasoline service system shall vest in the licensee any title, legal or equitable, whatever, nor shall it constitute a waiver by the licensor of the right to demand and compel the return of said gasoline service or any other rights herein reserved to the licensor, unless and until the full sum above mentioned as the market price and value of said gasoline service system is paid in full by the licensee to the licensor.

"The licensee may at any time during the continuance of this agreement, in the absence of default by the licensee, purchase said gasoline service system from the licensor by paying to the licensor the above mentioned value there in cash.

"Any time prior to the purchase of said gasoline service system by the licensee, this agreement may be cancelled by either party giving to the other party thirty days' notice of their intention to cancel, and in event said notice is given by the licensee, the return within said thirty days of the said gasoline service system to the licensor in good order and repair.

"And the licensee does hereby waive and relinquish any and all claims against the licensor, and does here by exonerate, discharge and agree to protest the said licensor from any and all liability for damage which may be suffered by—or any other person by reason of leakage, fire, explosion or other casualty occurring through any imperfection in or damage to said equipment from any other cause whatever."

"In witness whereof the said parties have hereunto set their hands.

"The Atlantic Refining Company,<br>"Per J. C. Frank.<br>"Andrew Johnson.

"In presence of us:
  "J. Thos. Warren
  "J. C. Frank.

"The undersigned owner of the above mentioned premises, at and upon which said gasoline service system is to be installed, hereby acknowledges to have received notice of the above agreement and assents to the terms and conditions thereof and expressly waives all right to hold or levy upon said gasoline service system or any and all parts thereof and equipment used in connection therewith, belonging to the Atlantic Refining Company, for rent or otherwise, and hereby consents to said gasoline service system and any and all parts thereof and equipment used in connection wtherewith being removed by the Atlantic Refining Company, its successors or assigns, or its or their representatives, according to the terms of the above agreement.

"ROBERT W. SMITH, OWNER.

"Witness:
  "J. THOS. WARREN."

Attached, and appearing as a part of the same agreement, there is the following:

"If, after a 30 days' notice to the licensee, by the licensor, or to the licensor, by the licensee, the licensor should remove the oufit itemized in this agreement, the licensor will repair any damages to the property caused by the installation of the outfit.

"It is understood that this clause is to apply only to damage done to the property caused by the installation of the outfit and this clause does in no way cancel the clause contained in *paragraph* No. 7."

The plaintiff further claims that Johnson, who was a party to the agreement, on June 6, 1919, sold his garage business to Hyman Feinberg, the defendant, with the notice to Feinberg that the tank, pump, etc., was the property of the Atlantic Refining Company, the plaintiff; that in February and March, 1920, the plaintiff, through its agents, made a demand on the defendant for possession of the property in question; that the defendant refused to surrender the possession of the property in question, whereupon the plaintiff had issued out of this court the writ of replevin under which the goods were replevied by the sheriff of this county.

The defendant claims that the plaintiff in this case is not entitled to the possession of the goods in question, because the tank, pump, etc., after they were placed upon the land, became fixtures, and the title to them passed to Hyman Feinberg when he purchased the real estate upon which the tank, pump, etc., had been placed by the plaintiff company, the purchase of the real estate by Feinberg being made without notice to Feinberg that Robert W. Smith, from whom he purchased the property, had consented to the agreement between Johnson and the plaintiff that the tank, pump, etc., should not become a fixture, and by reason of lack of such notice to him, when he purchased the real estate, the title to the tank, pump, etc., passed to him together with the title to the real estate.

The plaintiff contends that the defendant had notice or knowledge that the tank, pump, etc., was the property of the Atlantic Refining Company, and therefore he was not an innocent purchaser without notice or knowledge, and by reason thereof the title in the tank, pump, etc., did not pass to Feinberg when he purchased

the real estate, but remained and continues to remain in the plaintiff.

The question for you to determine under the evidence is who, as between the parties to this action, was entitled to the possession of the property in question at the time of the issuance of the writ of replevin, on April 22, 1920.

[1]   The action of replevin lies for the possession of goods and chattels unlawfully detained from the owner, or the person entitled to the possession thereof. The primary object of the action is the recovery of the property itself with damages for the taking and detention thereof. Secondarily and usually the object is the recovery of a sum of money equivalent to the value of the property.

[2–4]   It is claimed by the defendant that the chattels which the plaintiff seeks to recover in this action constitute what is known in the law as fixtures. A fixture has been defined as a thing which, though originally a movable chattel, is, by reason of its annexation to land, regarded as a part of the land, partaking of its character, and belonging, in the ordinary case at least, to the person or persons owning the land. The owner of a chattel and the owner of land may agree that the annexation of the chattel to the land shall not change the legal character of the chattel or affect its ownership, and such an agreement is generally regarded as valid as between the parties thereto. Where, however, the land passes into the ownership of a third person, not a party to such an agreement, and without notice or knowledge thereof, the purchaser of the land is not bound by such an agreement, but is entitled to the thing annexed to the land, as forming a part of the land. If any substantial part of the complete equipment necessary for the use of the chattels in question was fastened or attached to the freehold in a permanent manner, then all is to be considered as so attached, and also everything used in working it.

[5]   Notice or knowledge on the part of the purchaser of real estate relative to an agreement respecting the title to fixture on the premises purchased, being in some person other than the owner of the real estate, would be actual notice or knowledge of the fact, or such information of a reliable character with respect to the own-

Opinion.

ership as would impose upon him the duty of making inquiry as to the actual ownerhip of the fixtures upon the land.

[6,7]   One of the determining questions in this case is whether the defendant had notice of the ownership of the property in question, that is, whether he had notice that it was owned by some person other than the person from whom he purchased the land. If you find that he did not have notice and was an innocent purchaser for value, then the title would pass to him with the title to the land, but if he had notice or knowledge of the fact that the fixtures in question belonged to somebody other than the person from whom he purchased the land, then he would not be an innocent purchaser for value and as between the true owner of such property and himself, the true owner would be entitled to the possession of the property.   Any notice, or knowledge of any fact, that would put him upon inquiry as to the ownership of the property, would place a duty upon him to inquire and ascertain, if possible, the true owner; and the question of whether the defendant in this case had notice that the property in question belonged to the plaintiff in this action, rather than to the person from whom he purchased the real estate, is one that you will have to determine from the evidence, and you will have to determine the case from the preponderance of the evidence, and by preponderance of evidence is meant the greater weight of the evidence and not necessarily the greater number of witnesses.

[8] You are the sole judges of the facts in the case, and you are the sole judges of the credibility of the witnesses and the weight and value of their testimony, giving due regard to their manner as they appeared upon the stand, their apparent fairness or bias in giving their testimony, and their knowledge and recollection of the facts to which they testified.

[9]   If your verdict should be for the plaintiff, it may be that the goods should be returned by the defendant to the plaintiff, that is, *retorno habendo*.   If you think the property is not in a condition to be returned, by the defendant to the plaintiff, then you may find for the plaintiff for the value of the goods.   The plaintiff claims their value to be $485.   If your verdict should be for the

defendant it should be simply a verdict in favor of the defendant. So that you may find one of three verdicts, namely, first, a verdict for the plaintiff of *retorno habendo;* second, for the plaintiff for the value of the goods detained, and third, if in favor of the defendant it may be simply for the defendant.

Verdict for plaintiff.

Whereupon, counsel for the accused moved for a new trial and in arrest of judgment, for the reason set forth in the following opinion of the court. Argued before BOYCE and RICE, J. J.

RICE, J., delivering the opinion of the court.

The defendant assigned three reasons in his motion for a new trial and the third and only reason argued is:

"That the refusal of the court to instruct the jury to find a verdict for the defendant, as prayed, was erroneous."

[10]   The defendant contends that there was no evidence introduced at the trial tending to prove that Feinberg, the purchaser of the real estate, had notice or knowledge that his immediate predecessor in title had entered into an agreement with the plaintiff to the effect that the pump, tank and accessories were to remain and be the property of the plaintiff with the privilege of removal. And that without actual notice of the agreement between the former owner and the plaintiff in this action, he, Feinberg, took the fixtures as a part of the real estate at the time of purchase. The defendant, however, admits that there was testimony to prove that Feinberg had notice and knowledge that the tank, pump and accessories were the property of the plaintiff.

The court at the time of the trial was of the opinion that under the evidence the question, whether or not the defendant was a bona fide purchaser without notice, should be submitted to the jury. After a further examination of the facts in the case, and the law bearing upon the question, the court is of the opinion that they were not in error in submitting the case to the jury for its determination, as we think it not necessary that there should be evidence of actual notice to the purchaser or knowledge by him

of the existence of the agreement, if there was evidence of such a character with respect to the ownership of the fixtures, as would place upon the purchaser the duty of inquiry with respect to the status of the fixtures, and we think there was such evidence.

The motion for a new trial is refused.