PLANTERS' MFG. Co. *et al. v.* GREENWOOD AGENCY Co. *et al.*

(Division A. Jan. 29, 1934. Suggestion of Error Overruled Feb. 26, 1934.)

[152 So. 476. No. 30929.]

Sam L. Gwin, of Greenwood, for appellant, Planters Manufacturing Co.

**Osborn & Witty,** of Greenwood, for appellant, Mississippi Power & Light Company.

**Alfred Stoner,** of Greenwood, for appellees.

**Smith, C. J.**, delivered the opinion of the court.

This is a suit by the appellees against the appellants for conversion. It was begun in the circuit court, but was removed to the chancery court, and the pleadings were then shaped in accordance with equity procedure. It appears from the bill of complaint that the appellees,

complainants in the court below, are the beneficiary and trustee in a deed of trust executed in August, 1919, by the Cooperative Oil Company to secure an indebtedness due the Greenwood Agency Company on land owned by the Cooperative Oil Company on which was situated, among other things, a complete cotton gin plant. This deed of trust was foreclosed in December, 1926, and the proceeds of the sale were insufficient for the payment of the debt secured thereby. Prior to the foreclosure of this deed of trust, the appellants, Planters' Manufacturing Company and Mississippi Power & Light Company, defendants to the bill, removed from the gin plant the steam engine, boiler, and a belt, and converted the same to their own use. The prayer is for the recovery of the value of these articles.

The appellees answered separately, from which it appears that after the execution of the deed of trust by the Cooperative Oil Company to the Greenwood Agency Company, the property therein conveyed came into the ownership of the Planters' Manufacturing Company by mesne conveyances, and that certain parts of the gin plant were removed therefrom for the reason that they became inadequate for the operation of the gin and were replaced by new and better machinery, thereby enhancing the value of the gin plant.

The court below awarded a recovery for the value of the engine and boiler removed, but not for the belt.

The evidence discloses that there were originally three gin stands in the plant which were increased, after the execution of the deed of trust thereon, to six; that the engine and boiler were very old and inadequate even for the operation of three gin stands, both, particularly the engine, were badly in need of repair, the engine having been in use for more than thirty-five years, the manufacturer thereof having been out of business for more than that time. In order to remedy this situation, the Planters' Manufacturing Company, the then owner of

the property, exchanged the engine and boiler with the Mississippi Power & Light Company for a new electric motor and placed it in the gin plant in lieu of the engine and boiler removed. The motor was not only thereafter used for the operation of the gins, but was installed in such manner as to make it a permanent part of the plant. It could have been removed, as was the engine and boiler, without damage to the other machinery, but such is the case usually with the various component parts of any manufacturing establishment. This motor, therefore, became part and parcel of the gin plant and was covered by the deed of trust thereon, and it is clear from the evidence that instead of impairing, it enhanced, the value of the plant as a security for the debt secured by the deed of trust.

The Planters' Manufacturing Company being the owner of the gin, had the right to use and deal with it as it pleased, provided it did not thereby impair its value as a security for the debt, to secure which the appellees' deed of trust was given. In other words, the liability of a mortgagor for acts impairing the value of the mortgaged property is determined by the law of waste. Cf. Federal Land Bank of New Orleans v. Miss. Power & Light Co., 157 Miss. 737, 128 So. 98.

Two circumstances are relied on by the appellees as evidence that the electric motor was not intended by the Planters' Manufacturing Company to become a permanent part of the gin plant, and we will assume, for the purpose of the argument only, that under the circumstances hereinbefore set forth the Planters' Manufacturing Company would have been permitted to claim that the electric motor did not become subject to the lien of the deed of trust.

The trustee in the deed of trust testified that on the day of the foreclosure thereof he went to the gin plant and made a casual examination of it. The electric motor had been disconnected from the other machinery, but

had not been removed from, nor disconnected from, the concrete foundation on which it rested. This circumstance alone is not sufficient to negative the fact that the motor was not originally intended, or had ceased, to be an integral part of the gin plant.

The property covered by the deed of trust was purchased at the foreclosure sale by the Planters' Manufacturing Company. W. S. Barry, who owned practically all of the stock of the Greenwood Agency Company, was one of the bidders at the sale. The bids for the property were gradually raised until Barry offered eight thousand dollars therefor, whereupon the Planters' Manufacturing Company offered eight thousand fifty dollars therefor, and as there was no further bidding, the property was struck off to it. Barry testified that he would have offered several thousand dollars more for the property had it not been for an announcement made at the sale by S. L. Gwin, an attorney at law, to the effect that the new machinery in the gin plant ''was owned by the people who sold it, and that it did not belong to the gin.'' In this he was corroborated by another witness. The trustee at the sale testified that Gwin announced ''that there were some liens against the machinery.'' Both Barry and the trustee said that Barry asked Gwin how much was owing on the machinery, but that he declined to tell him.

Gwin testified that he made no such announcement, and was corroborated by others who attended the sale. This announcement, if made by Gwin, is claimed by the appellees to estop the Planters' Manufacturing Company from claiming that the electric motor became a fixture of the gin plant. Assuming for the purpose of the argument that such could be its effect, if made, it must appear that Gwin in making the announcement acted as the agent for the Planters' Manufacturing Company within the scope of his agency. Gwin testified that he was at the sale as a representative of the Cooperative Oil Com-

pany, the grantor in the deed of trust, and that he had no connection with the Planters' Manufacturing Company. The only evidence that can be said to contradict Gwin as to whom he was representing is the fact that the Co-operative Oil Company had some litigation with the Greenwood Agency Company growing out of the execution of the deed of trust, and that the Planters' Manufacturing Company was interested therein adversely to the Greenwood Agency Company, which fact was known to the trustee and to Barry. In the testimony of a witness who attended the foreclosure sale appear the following questions and answers:

"Q. You were there representing the Planters Manufacturing Company? A. Yes, sir.

"Q. So was Mr. Jones representing them? A. Yes, sir.

"Q. Mr. Gwin was on that side? A. Yes, sir."

Gwin's connection with this prior litigation was insufficient to show either that he represented the Planters' Manufacturing Company therein, or at the foreclosure sale, and the statement that Mr. Gwin was on that side, meaning the side of the Planters' Manufacturing Company, is insufficient to overcome Gwin's testimony that he was not representing that company. What the witness meant by "on that side" is not clear. The Cooperative Oil Company and the Planters' Manufacturing Company may have had similar interests in the matter, and therefore could be correctly said to be on the same side, but aside from that, there is no evidence indicating that the making of such an announcement was within the scope of Gwin's agency, assuming for this purpose that he did represent the Planters' Manufacturing Company at the sale. The fact that he is an attorney at law does not so disclose, and the burden was on the appellees to prove not only that Gwin was the agent of the Planters' Manufacturing Company, but that the making of the alleged

statement was within the scope of that agency. Howze v. Whitehead, 93 Miss. 578, 46 So. 401.

The court below, in a written opinion, set forth the ground of his decision as follows:

"It will be remembered that later the Greenwood Agency brought suit against the Planters Manufacturing Co., and the Miss. Power & Light Co., for wrongful conversion of the boiler and engine and a certain drive belt, alleging, among other things, that by reason of the statements made at the sale the bidding was suppressed or chilled and that W. S. Barry, representing the Greenwood Agency Co., was thereby prevented from bidding the full amount of this indebtedness as he had intended to do.

"Without going into a full discussion of all of the facts and as to what happened at the sale I am of the opinion that the great weight of the testimony is that it was there announced from an authoritative source that the new machinery would not go with the sale under the deed of trust and that the said statements made at the said sale so chilled the bidding and deterred the sale to an extent that a full and free bidding at the sale was not had, and that the said statements chilled the bidding at least to the extent of the value of that property that had been sold and delivered to the Mississippi Power & Light Co., hence the complainant in this cause should be entitled to recover to the extent of the value of the said property as of that date."

The allegation that the bidding at the foreclosure sale was "chilled" by the announcement said to have been made by Gwin does not appear in the bill of complaint, but in the answer of the appellees to a cross-bill filed by the Mississippi Power & Light Company; but, aside from that, the cause of action sued on was, as stated by the court below, i. e., the wrongful conversion of the boiler and engine and belt, and not for damages caused by the failure of the property to bring more at the foreclosure

sale because of the announcement said to have been made thereat by Gwin, the measure of which damages would have been, if recoverable at all, the difference between what the property brought at the sale and what it would have brought had the announcement not been made. Whether there was a conversion of the boiler, engine, and belt, for which the appellees ask recovery, depends on whether the electric motor became a part and parcel of the gin plant, in other words, a fixture therein; and therefore prevented the removal of the engine, boiler, and belt from being wrongful. The evidence of the announcement said to have been made by Gwin at the foreclosure sale was competent, if authorized by the Planters' Manufacturing Company, on that issue.

Reversed and bill dismissed.