Defense Plant Corporation Tax Assessment Case.

Argued September 27, 1944; reargued October 2, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

reargument refused November 17, 1944.

*Henry J. Crawford* and *Harold F. Reed,* with them *Reed & Ewing, Sterling Newell, William N. Gates* and *Squire, Sanders & Dempsey,* for appellant.

*John G. Marshall,* County Solicitor, for Beaver County, appellee.

*Edward G. Bothwell,* Assistant County Solicitor, with him *John J. O'Connell,* County Solicitor, for the County of Allegheny, under Rule 61.

OPINION BY MR. JUSTICE LINN, October 31, 1944:

The question is, What did Congress mean by the term "real property" in the Act waiving immunity from taxation of certain property owned by government agencies? It is presented by this appeal from the confirmation of a township tax assessment for the triennial period 1942-45. Appellant, Defense Plant Corporation, originally complained of the entire assessment, which itemized land, buildings and machinery, but at the hearing in the court below conceded the power to tax the land and buildings and denied only the power to tax the machinery.[1]

The parties have agreed that the plant-machinery was "necessary and essential to its [appellant's plant's] existence and operation as a manufacturing plant for

---

[1] The assessment was itemized:

| | |
|---|---|
| "Nine (9) Acres improved, assessed at $1,100 per acre | $9,900.00 |
| Twenty-four (24) acres, not improved, assessed at $1000 per acre | 24,000.00 |
| Plant building and cafeteria assessed at | 338,000.00 |
| Administration Building, assessed at | 32,000.00 |
| Boiler House, assessed at | 60,000.00 |
| Personnel Building, assessed at | 5,000.00 |
| Machinery, assessed at | 388,000.00 |
| Total | $856,900.00" |

aircraft propellers." It was held taxable as real estate pursuant to the General County Assessment Law of May 22, 1933, P. L. 853, 72 PS section 5020-101, providing: "Section 201. Subjects of Taxation Enumerated.—The following subjects and property shall, as hereinafter provided, be valued and assessed, and subject to taxation for all county, city, borough, town, township, school and poor purposes at the annual rate:

"(a) All real estate to wit: Houses, lands, lots of ground and ground rents, mills and manufactories of all kinds, furnaces, forges, bloomeries, distilleries, sugar houses, malt houses, breweries, tan yards, fisheries, and ferries, wharves, and all other real estate not exempt by law from taxation."

It has long been the rule in Pennsylvania that "Whether fast or loose, therefore, all the machinery of a manufactory which is necessary to constitute it, and without which it would not be a manufactory at all, must pass for a part of the freehold." *Voorhis v. Freeman,*[2] 2 W. & S. 116, 119 (1841). This rule prevails in the majority of the states in which the subject has been considered by the courts, as the cases, cited later, show. Appellant's machinery, being an integrated part of the manufactory, and so, of the freehold, was therefore taxable, as other real property in the township was taxable unless the Congressional immunity did not apply.

The Act [3] provides: "Any and all notes, debentures,

[2] See also, *Patterson v. Delaware County,* 70 Pa. 381; *Titus v. Poland Coal Company,* 275 Pa. 431, 119 A. 540; *Commonwealth Trust Company of Pittsburgh v. Harkins,* 312 Pa. 402, 167 A. 278; *Pennsylvania Chocolate Company v. Hershey Brothers,* 316 Pa. 292, 175 A. 694; *Central Lithograph Company v. Eatmor Chocolate Company,* 316 Pa. 300, 175 A. 697; *Roos v. Fairy Silk Mills,* 334 Pa. 305, 5 A. 2d 569; *McClure v. Atlantic Rock Company, Inc.,* 339 Pa. 296, 14 A. 2d 124.

[3] Approved June 10, 1941, c. 190, sec. 3, 55 Stat. 248, 15 USCA section 610, amending Act of January 22, 1932, c. 8, sec. 10, 47 Stat. 9.

bonds, or other such obligations issued by the corporation shall be exempt both as to principal and interest from all taxation (except surtaxes, estate, inheritance, and gift taxes) now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority, except as provided in section 742a(a) of Title 31. The corporation, including its franchise, its capital, reserves, and surplus, and its income shall be exempt from all taxation now or hereafter imposed by the United States, by any Territory, dependency, or possession thereof, or by any State, county, municipality, or local taxing authority; except that any real property of the corporation shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed. The exemptions provided for in the preceding sentence, with respect to taxation (which shall, for all purposes, be deemed to include sales, use, storage, and purchase taxes) shall be construed to be applicable not only with respect to the Reconstruction Finance Corporation but also with respect to (1) the Defense Plant Corporation, the Defense Supplies Corporation, the Metals Reserve Company, the Rubber Reserve Company, and any other corporation heretofore or hereafter organized or created by the Reconstruction Finance Corporation under section 606b of this title, as amended, to aid the Government of the United States in its national-defense program, (2) the RFC Mortgage Company, the Federal National Mortgage Association, and any other public corporation heretofore or hereafter organized by or at the instance of the Reconstruction Finance Corporation, and (3) the Disaster Loan Corporation, and any other public corporation which is now or which may be hereafter wholly financed and wholly managed by the Reconstruction Finance Corporation. Such exemptions shall also be construed to be applicable to the loans made,

524

and personal property owned, by the Reconstruction Finance Corporation or by any corporation referred to in clause (1), (2) or (3) of the preceding sentence, but such exemptions shall not be construed to be applicable in any State to any buildings which are considered by the laws of such State to be personal property for taxation purposes."

Our special concern is with the provisions ". . . except that any real property of the corporation shall be subject to State, Territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed . . . Such exemptions shall also be construed to be applicable to . . . personal property owned by . . . [Defense Plant Corporation] . . . but such exemptions shall not be construed to be applicable in any State to any buildings which are considered by the laws of such State to be personal property for taxation purposes."

What did Congress intend by the term "real property" in the statute which was designed to waive immunity in aid of the revenues of local communities in which industrial establishments were engaged in manufacturing defense material? Did it intend "real property" to include the entire "mill or manufactory" (as provided by local law) or only the land and vacant buildings without the mechanical part of the plant?

Two suggestions are made by the parties for determining the intended content of the term real property. The appellant says: "We submit that the primary, universally accepted meaning of 'real property' is, as indicated in the foregoing quotations,[4] land together with such tangible items, generally chattel in nature, as have by intention of the interested parties and by their per-

---

[4] The quotations are from 1 Tiffany, Real Property, (3d ed. 1939) sections 3 and 10; 52 C. J. p. 1156; In re Inglis, 69 Okla. 64, 169 Pac. 1083.

manent manner of attachment to the land become incorporated into the land, that is, buildings and fixtures."

We think there is such ambiguity and uncertainty in that statement, that we must reject it on the ground that it does not represent the majority view. Our examination of the decisions dealing with the actual and constructive attachment of machinery to the freehold throughout the states, shows that in a majority[5] of the states, the attachment to the land may be constructive[6] and need not be physical to the extent that removal will result in serious damage to the remaining freehold. In

[5] The majority referred to includes the following: *Humes v. Higman*, 145 Ala. 215, 40 So. 128; *Southern Cotton Oil Co. v. Lowery*, 231 Ala. 119, 163 So. 629; *Fechet v. Drake*, 2 Ariz. 239, 12 Pac. 694; *Teater v. Good Hope Development Corp.*, 86 P. 2d 673 (Cal.); *Cary Hardware Co. v. McCarty*, 10 Colo. App. 200, 50 Pac. 744; *Atlantic Refining Co. v. Feinberg*, 31 Del. 183, 112 A. 685; *Commercial Fin. Co. v. Brooksville Hotel Co.*, 98 Fla. 410, 123 So. 814; *Seedhouse v. Broward*, 34 Fla. 509, 16 So. 425; *Cunningham v. Cureton*, 96 Geo. 489, 23 S. E. 420; *J. & H. Day Co. v. Public Sav. Ins. Co.*, 85 Ind. App. 78, 151 N. E. 361; *Ottumwa Woolen Mills Co. v. Hawley*, 44 Iowa 57; *Green v. Chicago, R. I. & P. R. R.*, 8 Kan. App. 611; *Parsons v. Copeland*, 38 Me. 537; *Dudley v. Hurst*, 67 Md. 44, 8 A. 901; *Anderson v. Perpetual B. & L. Ass'n*, 190 A. 747 (Maryland); *Southbridge Sav. Bank v. Mason*, 147 Mass. 500, 18 N. E. 406; *Commercial Credit Corp. v. Com'th Mtge., etc.*, 276 Mass. 335; *Lyle v. Palmer*, 42 Mich. 314, 3 N. W. 921; *Detroit Trust Co. v. Detroit City Service Co.*, 262 Mich. 14, 247 N. W. 76; *Merchants' National Bank v. Stanton*, 55 Minn. 211, 218; *Planters' Mfg. Co. v. Greenwood Agency*, 168 Miss. 892, 152 So. 476; *Knickerbocker Trust Co. v. Penn Cordage Co.*, 66 N. J. Eq. 305, 58 A. 409; *McRae v. Central Nat. Bk.*, 66 N. Y. 489; *Foote v. Gooch*, 96 N. C. 265, 1 S. E. 525; *Metropolitan Life Ins. Co. v. Kimball*, 94 P. 2d 1101 (Oregon); Pennsylvania cases are cited above; *Metropolitan Life Ins. Co. v. Jensen*, 9 N. W. 2d 140 (South Dakota); *Danville Holding Corp. v. Clement*, 178 Va. 223, 16 S. E. 2d 345; *Pocahontas Coal & Coke Co. v. By-Products Pocahontas Co.*, 112 W. Va. 390, 164 S. E. 504; *Thomsen v. Cullen*, 196 Wis. 581, 219 N. W. 439.

[6] An interesting discussion of this subject by the Court of Appeal appears in *Tyne Boiler Works Co. v. Overseers*, L. R. 18 Q. B. D. 81 (1887).

Ohio, for example, only "slight" [7] attachment is required. The evidence in the record shows that some of the machinery in appellant's plant is easily removable; some is bolted to foundations; "hoists, the monorail, or crane runway" appear to be built in and supported by the structural part of the building. For some states, no decisions were found. In some states, statutes provide that certain classes of machinery shall be assessed as real property.[8]

On the other hand, the appellee submits that, in abolishing immunity and conferring the local power of taxation, Congress must have intended the content of the term real property to be determined by the law of the taxing district. In the condemnation proceeding, *U. S. ex rel. T.V.A. v. Powelson*, 319 U. S. 266, 63 Sup. Ct. 1047, 1054, the court said at page 279, "Though the meaning of 'property' as used in § 25 of the Act and in the Fifth Amendment is a federal question, it will normally obtain its content by reference to the local law." The rule was applied in *U. S. v. Becktold Co.*, 129 F. 2d 473 (C.C.A. 8th, 1942) and in *U.S. v. 19.86 Acres of Land*, 141 F. 2d 344 (C.C.A. 7th, 1944), similar cases being referred to in the opinions.

Against the adoption of the local definition of real estate, the appellant refers to several cases: *Carpenter v. Shaw*, 280 U. S. 363, 50 Sup. Ct. 121; *Lyeth v. Hoey, Collector*, 305 U. S. 188, 59 Sup. Ct. 155; and *Morgan v. Commissioner*, 309 U. S. 78, 60 Sup. Ct. 424. In the *Carpenter* case it was necessary to determine what Con-

---

[7] *Holland Furnace Co. v. Trumbull Sav. & Loan Co.*, 135 Ohio St. 48, 52 (1939). In this case the court said: "While, to make a chattel a fixture, there must be physical annexation of the chattel to the realty, the annexation may be very slight . . ."

[8] Vermont, Pub. L. (1933) sec. 584; Utah, Code Ann. (1943) 80-3-1; Kansas, Gen. Stat. (Corrick 1935) sec. 79-102; Rhode Island, Gen. Laws (1938) c. 30, section 3.

gress meant by the word "lands" in the Act ratifying the Atoka Agreement with certain Indian tribes then in Oklahoma Territory. The Act provided ". . . the lands allotted shall be non-taxable while the title remains in the original allottees." The question was whether oil royalty reserved by allottee-lessors was exempt or was taxable as personal property by the State of Oklahoma and the royalty was held non-taxable. The *Lyeth* and the *Morgan* cases involved the construction of the Federal Revenue Act, in one case the meaning of the word "inheritance" and in the other, the meaning of the term "general power of appointment." It was held that national uniformity in the collection of income and inheritance taxes required the application of the generally understood meaning of "inheritance" and of "general power of appointment," unaffected by local variations from the generally understood meaning of the words. *National Labor Relations Board v. Hearst Publications, Inc.*, 322 U. S. 111, determining what Congress meant by the word "employes" in the Wagner Act, was also referred to. It was held that as the Act was "administered by a national agency, intended to solve a national problem on a national scale," local definitions of the word must be rejected. Those cases, and others which might be added, illustrate the application of the principle of federal supremacy, a principle not challenged by the appellee. Its submission is that when Congress conferred the power of "local taxation [of real property] to the same extent according to its value as other real property is taxed" without defining real property in the Act, it necessarily intended that all the property within the taxing district considered to be real property, should be taxable; that if this construction were rejected, the machinery constituting part of appellant's plant would be exempt while like machinery of a private individual would be taxed; that one purpose of the

Act was to remove such discrimination as had formerly existed, in order that tax burdens might be more equitably distributed.

The brief filed on behalf of Allegheny County states that "The amending Act of 1941 originated in the Senate as S. 1438 of the 77th Congress, 1st Session. Section 3 of the bill amends Section 10 of the original Act. In commenting on the existing law (i.e., the provisions of Section 10 of the original Act), the report of the Committee on Banking and Currency, (S. Rept. No. 292), submitted through Mr. Senator Brown, contains the following relevant sentence: 'The only qualification of these exemptions provides that real property of the Corporation is to be subject to nondiscriminatory State and local taxes.'" In the brief of the appellant it is said that Pennsylvania furnishes an "example of tax diversity." Different taxing districts may have different rates of assessment or none at all; such diversity is not prohibited; what the law prohibits is discrimination within the boundaries of the taxing district. The Constitution of Pennsylvania allows classifications of municipalities, counties, townships, etc., and classification has been made pursuant to that power. For cities of the first class, for example, the law provides that in the ". . . assessment of real estate for taxation, the machinery and tools used in manufacturing in any mill or manufactory shall not be considered or included in determining the value of real estate." Act of June 3, 1915, P. L. 787, 53 PS section 4742. In cities of the second class such property is not taxable for city or school purposes: Act of March 7, 1901, P. L. 20, Art. XIX, section 3, cl. 1, amended by the Act of May 12, 1911, P. L. 287, section 1, 53 PS section 9634. But the mere fact that in some taxing districts certain property is taxable and in others is exempt, is of no consequence in this review because appellant does not contend that there was discrimination against its property in the taxing township. For

the same reason it would seem to be immaterial if in some states it may be found unnecessary to raise revenue by taxing such property.

There is difficulty in ascertaining with certainty what Congress meant by the words real property in the statute. There is no federal general common law [9] to which we can turn for aid. In 36 Words and Phrases, p. 221, many varying definitions of real property are given. Dictionaries define it as land, real estate, realty, and the like. Any adequate definition must take account of the doctrines of fixtures and of equitable conversion. We understand appellant's position to be that Congress intended that the content of the term real property should be the view prevailing in the majority of the states that have dealt with the subject of chattels made part of the freehold. The cases cited above in note 5 show that the majority view is contrary to that suggested as the standard. If appellant is correct in suggesting that the Congressional meaning is to be found in the prevailing view among the states, we must hold that the machinery was properly included in the assessment of real estate and entitled to the waiver of federal immunity. If, on the other hand, we accept the appellee's submission that Congress intended that the content of the term real property should be found in the law of the assessing district, the machinery was properly included in the assessment. In either view, we all agree the appeal fails.

Order affirmed.

---

[9] *Erie R. Co. v. Tompkins*, 304 U. S. 64, 78, 58 Sup. Ct. 817, 822.